UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILLERS CAPITAL INSURANCE COMPANY a/s/o DEL-HOMES CATALOG GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., O'DONNELL, NACCARATO & MACINTOSH, INC., and EAST COAST ERECTORS, INC.,<br><br>Defendants.<br><br>and<br><br>LIGHTHOUSE CONSTRUCTION, INC.,<br><br>Defendant and Third-Party Plaintiff,<br><br>v.<br><br>EAST COAST ERECTORS, INC.,<br><br>Defendant and Third-Party Defendant. | C.A. No. 04-339-JJF<br><br><br><br><br><br><br><br><br>**JURY TRIAL OF TWELVE DEMANDED** |

## FIRST AMENDED COMPLAINT

1. Plaintiff Millers Capital Insurance Company (hereinafter "Millers Capital") is a business incorporated under the laws of Pennsylvania with its primary place of business located at 805 North Front Street, P.O. Box 1246, Harrisburg, PA 17108-1246, and at all times hereinafter mentioned was authorized to do business in the State of Delaware as an insurance company.

2. Plaintiff's insured, Del-Homes Catalog Group, LLC (hereinafter "Del-Homes") is the owner of a warehouse and distribution facility located at 97 Commerce Way, Dover, Delaware, and at all times herein was insured under plaintiff's policy #609497.

3. Defendant Lighthouse Construction, Inc. (hereinafter "Lighthouse Construction") is a business incorporated under the laws of Delaware with its primary place of business located at 1201 College Park Drive, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, general contracting and construction.

4. Defendant Becker Morgan Group, Inc. (hereinafter "Becker Morgan") is a business incorporated under the laws of Maryland, and is the successor to Becker Morgan Moore Olds & Richter, Inc., with a place of business located at 738 S. Governors Avenue, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

5. Defendant O'Donnell, Naccarato & Macintosh, Inc. (hereinafter "O'Donnell, Naccarato & Macintosh") is a business incorporated under the laws of Delaware with its primary place of business located at 300 Delaware Avenue, Suite 820, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

6. Defendant East Coast Erectors, Inc. (hereinafter "East Coast Erectors") is a business incorporated under the laws of Delaware with a registered agent located at 1332 King Street, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing, engineering, and constructing buildings.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332. The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a).

## FACTS

8. In or about September 1999, Del-Homes acquired a building that was designed, engineered, supplied and/or erected by Lighthouse Construction located at 97 Commerce Place (hereinafter the "1999 building").

9. Upon information and belief, East Coast Erectors provided design, engineering, and erection services to Lighthouse Construction in connection with the construction of the 1999 building.

10. Upon information and belief, Becker Morgan and/or its predecessor Becker Morgan Moore Olds & Richter, Inc. provided design and engineering services to Lighthouse Construction in connection with the construction of the 1999 building.

11. Upon information and belief, O'Donnell, Naccarato & Macintosh also provided design and engineering services to Lighthouse Construction in connection with the construction of the 1999 building. The 1999 building was erected adjacent to a preexisting building, also acquired by Del-Homes in September 1999, that was erected in or about 1995 (hereinafter the "1995 building").

12. ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12 Existing Roofs states, "Existing roofs shall be evaluated for increased snow loads caused by additions or alterations. Owners or agents for

owners of an existing lower roof shall be advised of the potential for increased snow loads where a higher roof is constructed within 20 feet."

13. In the course of erecting the 1999 building, defendants failed to properly evaluate the 1995 building for the increased snow load caused by the construction of the 1999 building and the resulting height differential created where the buildings interfaced.

14. In the course of designing and constructing the 1999 building, defendants did not engineer or otherwise account for the additional snow load that would be imposed on the pre-existing 1995 building.

15. The 1999 building was designed and constructed without adequate bracing or other structural support being provided for the pre-existing 1995 building where they interfaced.

16. On or about February 17, 2003, a substantial portion of the roof of the 1995 building collapsed following a foreseeable snowfall which collapse directly resulted from the carelessness, negligence and negligent omissions of defendants, as hereinafter more fully set forth.

17. As a result of the collapse, Del-Homes sustained substantial damage to its 1995 building and incurred business income and extra expense losses.

18. Pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 as a result of the foregoing.

19. As a result of the aforesaid payments, and pursuant to the contract of insurance and by operation of law, plaintiff is subrogated to the rights of its insured against all parties responsible for the occurrence of said damages including, but not limited to, any and all subsequent payments related to the loss suffered.

## COUNT I – Negligence
## Plaintiff v All Defendants

20. Plaintiff incorporates by reference the allegations of paragraphs 1 through 19 hereof as though fully set forth at length herein.

21. The roof collapse referred to above and the consequent damages sustained by Del-Homes were caused by the negligence, carelessness and negligent omissions of defendants, their agents, servants and/or employees acting within the course and scope of their employment in:

   a. failing to properly engineer or design for the increased snow loading imposed on the pre-existing 1995 building as a result of the construction of the 1999 building;

   b. failing to warn of the need to engineer or design for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

   c. failing to design or engineer the 1999 building in a manner that did not compromise the structural integrity of the 1995 building;

   d. failing to properly inspect the 1995 building for adequate structural stability against snow loads that could and did result from construction of the 1999 building immediately adjacent to the 1995 building;

   e. failing to advise and warn of the necessity to review the design of the 1995 building for the additional loads that could be imposed by the construction of an adjacent higher building;

   f. failing to advise and warn of the necessity to inspect the 1995 building for conformance with the design drawings of the 1995 building in anticipation of additional loading on the 1995 building from construction of the 1999 building;

   g. failing to redesign and/or re-engineer the 1995 building to accommodate the additional load imposed by the construction of the 1999 building;

   h. failing to warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings;

   i. failing to adequately warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings without engineering or designing for the additional load imposed upon the 1995 building;

   j. failing to install additional bracing and/or structural reinforcement to counter the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

k. failing to recognize or perceive the additional load imposed on the 1995 building by the construction of the 1999 building;

l. failing to provide alternative design and/or engineering for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

m. failing to address or counteract the additional wind drifted snow load conditions created by the 1999 building's height differential at the point where the buildings interfaced;

n. failing to properly brace and/or support structural components and/or members of the buildings to support anticipated wind drifted snow load conditions;

o. failing to perform standard calculations to identify and correct the inherent design defects with interfacing two buildings with significant height differentials;

p. failing to select competent and skilled workers and subcontractors to design, engineer, supply and erect the buildings in accordance with industry standards and readily identifiable load conditions;

q. failing to warn of the inherent defects, known defects, and work product deficiencies that compromised the structural integrity of the 1995 building;

r. failing to perform the design, engineering, supply and construction of the 1999 building in a good and workmanlike manner;

s. failing to comply with applicable codes and standards including but not limited to ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12; and

t. otherwise failing to use due care under the circumstances.

22. As a direct and proximate result of the collapse, Del-Homes sustained substantial damage to its building and incurred business income and extra expense losses.

23. As a result of the foregoing and pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which defendants are liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendants Lighthouse Construction, Inc., Becker Morgan Group, Inc., O'Donnell, Naccarato & Macintosh,

Inc., and East Coast Erectors, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

## COUNT II – Negligent Misrepresentation
### Plaintiff v O'Donnell, Naccarato & Macintosh

24. Plaintiff incorporates by reference the allegations of paragraphs 1 through 23 hereof as though fully set forth at length herein.

25. Upon information and belief, O'Donnell, Naccarato & Macintosh was specifically retained by Lighthouse Construction and/or East Coast Erectors to engineer the 1999 building.

26. In the course of providing engineering services, O'Donnell, Naccarato & Macintosh reviewed applicable building codes, designed the 1999 building, and prepared plans and drawings for plan approval and/or building permit issuance by the local and/or state agencies responsible for new construction in Dover, Delaware.

27. As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to recommend or require necessary modifications and/or additions to the 1995 building to protect against collapse due to excessive snow loads and, as a result, supplied false, inadequate, incomplete and incorrect information to others in their business relations, including Lighthouse Construction and/or East Coast Erectors.

28. As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to design the building in a manner that did not place the 1995 building at risk of collapse due to snow loading.

29. O'Donnell, Naccarato & Macintosh was, at all times relevant hereto, an engineering firm and was in the business of supplying structural design information and plans/drawings used

by others to construct buildings such as the 1999 building constructed by Lighthouse Construction.

30. As set forth in Count I and above, O'Donnell, Naccarato & Macintosh failed to exercise reasonable care or competence in obtaining or communicating the engineering information reasonably relied upon before, during and after construction.

31. O'Donnell, Naccarato & Macintosh was under a public duty to obtain and communicate engineering information that was the result of reasonable care or competence.

32. The engineering services provide by O'Donnell, Naccarato & Macintosh were intended to benefit a limited group of persons, including Plaintiff, as a subsequent owner of the buildings.

33. As a direct and proximate result of the collapse caused by the aforementioned negligent misrepresentations of O'Donnell, Naccarato & Macintosh, Del-Homes sustained substantial damage to its building and incurred business income and extra expense losses.

34. As a result of the foregoing and pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which the defendant is liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendant O'Donnell, Naccarato & Macintosh, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

WHITE AND WILLIAMS LLP

BY: _____
Frank Noyes, Esquire
824 North Market Street, Suite 902
Wilmington, DE 19899
302-654-0424
Attorney for Plaintiff

Of Counsel:
Ron Pingitore, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19135-7395
215-864-6324