**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FEDERAL INSURANCE COMPANY   :  Civil Action No. 04-339/04-1322 JJF
a/so/o EZIBA.COM, INC./AVACET,   :
INC., EZIBA SECURITIES CORP. and   :
MILLERS CAPITAL INSURANCE   :  CONSOLIDATED ACTION
COMPANY a/s/o DEL-HOMES   :
CATALOG GROUP, LLC,   :
  :  JURY OF TWELVE DEMANDED
       Plaintiffs,   :
  :
v.   :
  :
LIGHTHOUSE CONSTRUCTION, INC.,   :
BECKER MORGAN GROUP, INC. and   :
O'DONNELL, NACCARATO &   :
MACINTOSH, INC. and EAST COAST   :
ERECTORS, INC.   :
  :
       Defendants,   :
  :
and   :
  :
LIGHTHOUSE CONSTRUCTION, INC.,   :
  :
       Third-Party Plaintiff,   :
  :
v.   :
  :
EAST COAST ERECTORS, INC.,   :
  :
       Third-Party Defendant.   :

### BRIEF OF LAW IN SUPPORT OF
### EAST COAST ERECTORS, INC.'S MOTION FOR
### PARTIAL SUMMARY JUDGMENT BASED UPON
### <u>STATUTE OF REPOSE</u>

COMES NOW Defendant and Third-Party Defendant East Coast Erectors, Inc.

("ECE") and files its Brief of Law in Support of its Motion for Partial Summary Judgment

based on the statute of repose respectfully showing the Court as follows:

**McLAIN & MERRITT, P.C.**       **WETZEL & ASSOCIATES, P.A.**
Robert B. Hill, Pro Hac Vice       Benjamin C. Wetzel III (I.D. No. 985)
3445 Peachtree Road, NE       Natalie M. Ippolito (I.D. No. 3845)
Suite 500       The Carriage House, Suite 201
Atlanta, GA 30326       1100 N. Grant Avenue
(404) 266-9171       Wilmington, DE 19805
     (302) 652-1200

*Attorneys for Defendant East Coast Erectors, Inc.*

Dated: August 17, 2005

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES                                          ii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING              1

SUMMARY OF THE ARGUMENT                                       3

STATEMENT OF FACTS                                            4

STANDARD FOR SUMMARY JUDGMENT AND ARGUMENT                   10

CONCLUSION                                                   15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Gee v. CBS, Inc.*, 471 F.Supp. 600, 635 (E.D. Pa. 1979)    10

*O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 714 (3d Cir. 1982)    10

*Windley v. Potts Welding & Boiler Repair Co., Inc.*, 888 F.Supp. 610
(De 1995)    13

## DELAWARE

*Cheswold Volunteer Fire Company v. Lambertson Construction
Company*, 462 A.2d 416, 419 (Del. Super. 1983)    12

*The City of Dover v. International Telephone and Telegraph
Corporation*, 514 A.2d 1086 (Del. 1986)    12

## STATUTES AND RULES

10 *Del.C.* § 8127    3, 9-15

Rule 56 of the Federal Rules of Civil Procedure    10

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

Plaintiffs, Millers Capital Insurance Company ("Millers") and Federal Insurance Company ("Federal"), have filed this action against Lighthouse Construction, Inc. ("Lighthouse"), O'Donnell, Naccarato & MacIntosh, Inc. ("ONM"), and Becker Morgan Group, Inc. ("BMG"). The Federal action against Lighthouse, ONM and BMG was filed on May 27, 2004. (D.I. 1.) Lighthouse, ONM and BMG answered and certain crossclaims were filed among them for contribution and indemnity. (D.I. 9, 12, 17.) Millers filed its action on October 1, 2004. (Action No. 04-1322, D.I.1.) Defendant Lighthouse filed its Answer and a Third-Party Complaint against East Coast Erectors, Inc. on November 19, 2004, (Action No. 04-1322, D.I.5) which was the first legal action asserted against ECE with respect to the claims asserted in this litigation.

Subsequent to the joinder of ECE by Lighthouse's Third-Party Complaint, Plaintiff Millers sought and was granted leave to amend its pleadings to add a direct action against ECE. (D.I. 116.) Thereafter, on January 26, 2005, Lighthouse filed a motion for leave to file a Third-Party Complaint against ECE in the Federal Action. (D.I. 59 and 101.) Lighthouse's motion is still pending. Federal then filed a motion for leave to file a Rule 14(a) claim against ECE, which is also still pending. (D.I. 73.)

There are presently pending against ECE: the direct action of Millers, a motion to add claims by Federal, the third-party action of Lighthouse, and crossclaims of Lighthouse

1

and BMG.[1]  Pursuant to the Delaware Builders Statute of Repose, 10 *Del.C.* § 8127, ECE is moving for partial summary judgment against all plaintiffs' claims, motions to assert claims, defendant's third-party complaints and any cross claims which arise out of alleged negligence, errors or omissions allegedly committed by ECE in 1995.

---

[1]     ONM has not filed a crossclaim against ECE.

## SUMMARY OF THE ARGUMENT

East Coast Erectors, Inc. is a steel erection contractor which erected certain structural steel framing and sheeting on a metal building built for Del Homes Catalog Group, LLC, in 1995 (the "1995 Building"). During the construction of the 1995 Building, certain bracing of the steel rafters at certain locations was not installed by ECE. A final Certificate of Occupancy was issued by the City of Dover on December 14, 1995.

Del Homes Catalog Group, LLC built another building adjacent to a portion of the 1995 Building in 1999, which was higher than the 1995 Building and exposed the 1995 Building to additional snow drift loading. The 1995 Building collapsed on February 17, 2003 as the result of heavy snow loads on the roof of the 1995 Building. Plaintiffs are the insurer/subrogees of the owner, tenants and companies having goods stored in the 1995 Building and have filed this subrogation action alleging negligence for failure to reinforce the 1995 Building to resist the loads of snow drift caused by the 1999 Building. Defendants and Third Party Plaintiff Lighthouse Construction, Inc. have filed claims for contribution and indemnity against ECE. Plaintiffs' expert witness on liability, Charles N. Timbie, has opined that the missing braces were a defect in the 1995 Building which allowed the collapse caused by drifting snow to progress through the remainder of the warehouse portions of the 1995 Building.

Any claims against ECE arising out of the construction of the 1995 Building, including the omission of bracing, are barred by the Delaware Builder's Statute of Repose. 10 *Del.C.* § 8127.

3

## STATEMENT OF FACTS

The undisputed material facts supporting this motion are set forth as follows and are supported by the Appendix of Evidence in Support of East Coast Erectors Motion For Summary Judgment Based on Statute of Repose, filed concurrently herewith, and incorporated herein by reference:

1.     ECE is a construction contractor based in New Castle, Delaware, which is engaged in the business of erecting conventional and pre-engineered structural steel building systems.(Exhibit A, Williams Dep. pp. 24-25; Appendix A-5 to A-6.)

2.     Del Homes Catalog Group, LLC is the owner of a group of buildings constructed with structural steel materials at 97 Commerce Way, Enterprise Business Park, Dover, Delaware (Exhibit B; MacLeish, pp. 69; Appendix A-31). The building which is the subject of this action was a pre-engineered metal building system manufactured by Varco Pruden Building Systems, Inc. in 1995. It was erected at the Enterprise Business Park, 97 Commerce Way, pursuant to a contract between Del Homes Catalog Group, LLC and its general contractor, an affiliated company known as Del Homes, Inc. ("Del Homes"). Del Homes, Inc. in turn contracted with J. W. Walker & Sons, Inc., a contractor located in Middleton, Delaware ("Walker"). (Exhibit C, Dep. Exhibit MacLeish 37; Appendix A-46; Exhibit B, MacLeish Dep. pp. 39-46; Appendix A-23 to A30.)     Pursuant to the subcontract, Walker supplied the pre-engineered metal building system manufactured by Varco Pruden Building Systems ("Varco Pruden"). (Exhibit B, MacLeish Dep. pp. 43-46; Appendix A-27 to A-30.) Walker subcontracted the erection of the Varco Pruden Building System to ECE. (Exhibit B, MacLeish Dep. p. 46; Appendix A-30; Exhibit D, Contract

4

dated June 29, 1995, ECE 0166-0170; Appendix A-48 to A-52.) ECE's scope of work was the erection of the structural steel framing and roof and wall sheeting of the metal building system on the location and foundations supplied by Del Homes and the owner. (The building thus erected is hereinafter called the "1995 Building.") The 1995 Building consisted of a 76,000 square foot warehouse area and a 48,000 two level office area. (Exhibit E; Dep. Exhibit 14; Appendix A-54.)

3. The 1995 Building was completed and a final Certificate of Occupancy was issued by the City of Dover on December 14, 1995 (Exhibit F; Appendix A-57.) During the erection of the 1995 Building, ECE did not install certain braces at the connections of the interior columns to the rafters of the building because ECE had been informed that the braces were not necessary (these braces are hereinafter referred to as the "flange braces" or "frame braces") (Exhibit A, Williams Dep. pp. 112-114; Appendix A-17 to A-19.)

4. In 1999, Del Homes Catalog Group, LLC planned and developed the addition of another structural steel building at the Enterprise Business Park, 97 Commerce Way, which in part was constructed adjacent and attached to the 1995 Building along a 200 foot section of the East sidewall of the 1995 Building. (Exhibit B; MacLeish Dep. pp. 69-72; Appendix A-31 to A-34.) (The second building is hereinafter called the "1999 Building.") The 1999 Building was at one point approximately five to six feet higher in elevation than the 1995 Building where the two buildings join together. It is generally agreed that this "Roof Step" condition created a potential for snow drift accumulations on the lower roof of the 1995 Building. The Roof Step continued along a 200 foot section of

the 1995 Building, gradually decreasing in height to approximately 2 or 3 feet. (Exhibit B, MacLeish Dep. pp. 176, 188-191; Appendix A-39 to A-43.)

     5.     Del Homes Catalog Group, LLC contracted with Defendant Lighthouse as the general contractor for the design and supply of the 1999 Building. (Exhibit H; Appendix A-59; Exhibit B; Appendix A-20.) Lighthouse contracted with numerous subcontractors for the completion of the 1999 Building, including ECE. Lighthouse contracted with ECE to erect the structural steel, to engage a licensed engineering firm to design the structural steel and a means of reinforcing the 1995 Building at the Roof Step, and to install any necessary reinforcement for the snow drift at the Roof Step at the 1995 Building. (Exhibit A, Williams Dep. pp. 66-75; Appendix A-7 to A-16; Exhibit I; Appendix A-67; Exhibit B, MacLeish Dep. pp. 118, 120, 121; Appendix A-20.) ECE contracted with ONM, a licensed structural engineering firm, who designed the structural steel for the 1999 Building and a reinforcement system for the 1995 Building intended to address snow drift at the Roof Step. (Exhibit A, Williams Dep. pp. 70-71; Appendix A-11 to A-12; Exhibit J; Appendix A-73.)

     6.     The 1999 Building was completed and a final Certificate of Occupancy issued by the City of Dover on December 2, 1999. (Exhibit K; Appendix A-75.)

     7.     On February 17, 2003, during the February blizzard in the Dover, Delaware area, the 76,000 square foot warehouse portion of the 1995 Building collapsed (the "Warehouse Building"). The 48,000 square foot section of the building which included business offices did not collapse (the "Office Building"). (Exhibit B, MacLeish Dep. pp. 141-143; Appendix A-36 to A-38.) The 1995 Building was leased by ClientLogic, as the

6

successor to Catalog Resources, Inc. (Exhibit M, Document #MMG 0378, Dep. Exhibit 73; Appendix A-79.)

8.      Plaintiff Millers Capital Insurance Company as subrogee of Del Homes Catalog Group, LLC filed an action alleging negligence as to all defendants (Count I) and negligent representation as to ONM(Count II). (See Millers' First Amended Complaint, D.I. 117.) Plaintiff Federal as subrogee of EZIBA.COM, Inc. filed a motion against ECE attempting to allege a single count of negligence (Count I). (See Plaintiffs' Motion for Leave to File Rule 14(a) Claim Against Third Party Defendant East Coast Erectors, Inc.; D.I. 73.) Defendant Lighthouse filed a third-party action seeking contribution and indemnity against ECE. Defendant BMG has filed cross claims as to ECE seeking indemnity and contribution. (D.I. 62.)

9.      The 1999 Building was not damaged by the snow storm, although a temporary wall was installed at the open location at the wall of the 1999 Building from which the 1995 Building had fallen away. (Exhibit L, Beiser Dep. p. 43; Appendix A-77.)

10.      The substance of the complaints of the plaintiffs' and defendants' third-party claims and cross-claims asserted in this action is related to the alleged negligence of the defendants by failing to adequately reinforce the 1995 Building to accommodate the drift created by the Roof Step condition when the 1999 Building was added.

11.      Plaintiffs jointly identified Mr. Charles M. Timbie as a structural engineering expert on the issue of liability. Mr. Timbie issued his report on July 8, 2005. While the Timbie report did not expressly complain of any deficiencies with the erection of the 1995 Building, Mr. Timbie testified at his deposition on August 4, 2005 that the

7

report implicitly complains about the omission of certain flange braces at the connections of the steel rafters and interior supporting columns of the 1995 Building and the alleged failure to disclose the omission of the braces in the drawings of Varco Pruden which were delivered to ONM. (Exhibit N, Timbie Dep. pp. 48-55; Appendix A-83 to A-88.) Mr. Timbie testified that the cause of the collapse of the 1995 Building was the failure of two bar joists adjacent to the east sidewall of the 1995 Building where the 1999 Buildings connected due to heavily drifted snow. (Exhibit N, Timbie Dep. pp. 112-115; Appendix A-90 to A-93.) However, Mr. Timbie also testified that the collapse would have been limited to the area on the east side of the building and the entire 1995 Building warehouse would not have collapsed except for the omission of the flange braces in the 1995 Building. (Exhibit N, Timbie Dep. pp. 173-175, 203-205; Appendix A-96 to A-98, A-99 to A-101.)

      12.     All of the installation of the flange braces in the 1995 Building would have occurred during the 1995 construction, which was completed on December 14, 1995. (Exhibit A, Williams Dep. pp. 112-114; Appendix A-17 to A-19.) Plaintiffs, third-party plaintiff and cross-claimants against ECE contend that the omission of the flange braces in the 1995 Building was a contributing, proximate, or concurring cause of the collapse and consequential damage to plaintiffs' subrogors, and seek damages against ECE, or contribution or indemnity from ECE.

8

13.     The period of time which expired between the final completion and issuance of the Certificate of Occupancy for the 1995 Building and the collapse of the 1995 Building was eight (8) years and 65 days.

14.     The alleged omission of the flange braces from the 1995 Building is an alleged "Deficiency" arising out of the "Construction" of an "Improvement" pursuant to a "Contract," all as defined and contemplated by 10 *Del.C.* § 8127 (the "Statute of Repose").

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, a Motion for Summary Judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 714 (3d Cir.1982). If the claim of the non-moving party is time-barred as a matter of law and no genuine issue of material fact remains, the moving party is entitled to summary judgment. *See, e.g., Id.* (granting motion for summary judgment on time barred claim); *Gee v. CBS, Inc.*, 471 F. Supp. 600, 635 (E.D. Pa. 1979) ("there is no question that the statute of limitations time bar may be effectuated on a Rule 56 motion").

## ARGUMENT

The Delaware "builders" Statute of Repose provides that:

"No action, in or based upon a contract (oral or written, sealed or unsealed), in tort, or otherwise, to recover damages or for indemnification or contribution for damages, resulting: (1) From any alleged deficiency in the construction or manner of construction of an improvement to real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction; .... shall be brought against any person performing or furnishing, or causing the performance or furnishing of, any such construction of such an improvement or against any person performing or furnishing, or causing the

10

performing or furnishing of, any such designing, planning, supervision, and/or observation of any such construction or manner of construction of such an improvement, after the expiration of 6 years from whichever of the following dates shall be earliest:

> a.    The date of purported completion of all the work called for by the contract as provided by the contract if such date has been agreed to in the contract itself; ...
>
> e.    The date the person against whom the action is brought has received final payment in full, under the contract for the construction or for the designing, planning, supervision, and/or observation of construction, as the case may be, called for by contract;
>
> f.    The date when the construction of such an improvement as called for by the contract has been substantially completed;
>
> g.    The date when an improvement has been accepted, as provided in the contract, by the owner or occupant thereof following the commencement of such construction; ...."

10 *Del.C.* § 8127.

There is no issue of fact as to the applicability of the Statute of Repose to ECE in this action pertaining to the 1995 Building in the following respects:

> (1)    The omission of flange braces from the 1995 building that is alleged by Mr. Timbie to have caused the progression of the collapse to the warehouse is a "Deficiency" as contemplated by 10 *Del.C.* § 8127(a)(1);

11

(2)    The 1995 building is an "Improvement" as contemplated by 10 *Del.C.*
§ 8127(a)(2);

(3)    ECE is a "Person" as contemplated by 10 *Del.C.* § 8127(a)(3);

(4)    The erection and installation of structural steel members, including interior
columns, rafters and flange braces is "Construction" as contemplated by 10
*Del.C.* § 8127(a)(4); and

(5)    The claims asserted in this action are actions for damages which constitute
an "Action" as defined in 10 *Del.C.* § 8127(6).

The builders statute of repose prohibits any action whether based on contract, tort
or otherwise for damages, indemnification or contribution for damages resulting from an
alleged deficiency in the construction of an improvement to the real property "... after the
expiration of 6 years from the earliest of several specified dates" set forth in the statute.
The most obvious date is provided as "the date when the construction of such an
improvement as called for by the contract has been substantially completed; ..." 10 *Del.C.*
§ 8127(b)(f). The 1995 Building was certified for occupancy on December 14, 1995.
(Exhibit F, Appendix A-57.)

The Delaware statute of repose is a true statute of repose which prevents a claim
from arising. The passing of the 6-year period deprives the injured party of a legal right to
redress. *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 462 A.2d 416, 419 (Del.
Super. 1983); *City of Dover v. International Telephone and Telegraph Corp.*, 514 A.2d
1086 (Del. 1986). By the express terms of the statute, any person includes an erection
subcontractor for a metal building, in this case, ECE. ECE is a "person" protected by the

Statute of Repose, its services were clearly "construction", and the construction was completed and the building occupied over 8 years prior to the collapse. Any claims, whether contractual or tort, have been extinguished by the Statute of Repose. *See also, Windley v. Potts Welding & Boiler Repair Co., Inc.*, 888 F.Supp. 610 (D. Del.1995).

Since the filing of this action, the focus of plaintiffs' pleadings and all additional pleadings asserted against the parties in this action has been on the 1999 construction services and designs. It has been unclear throughout discovery whether any party to this action proposed to complain about the omission of frame braces, whether or not authorized by Varco Pruden and Walker. (See Exhibit A, Williams Dep. pp. 112-114; Appendix A-17 to A-19.) When the expert reports of the Plaintiffs were produced pursuant to the Court's Scheduling Order, the Plaintiffs produced a report by Mr. Charles N. Timbie which only implicitly criticized the omission of the frame braces in the 1995 Building. However, when Mr. Timbie's deposition was taken, he testified that, in his opinion, the collapse of the 1995 building would not have progressed through the entire warehouse except for the omission of the flange braces. (Exhibit N, Timbie Dep. pp. 173-175, 203-205; Appendix A-96 to A-98, A-99 to A-101.) Accordingly, whether by intent or necessity, plaintiffs, defendants and third–party plaintiffs will contend that the omission of the flange braces from the 1995 Building was a contributing or proximate cause of the damages arising out of the collapse which are sought in these actions. All such claims are barred and precluded by the statute of repose.

ECE was also involved as a subcontractor in the 1999 Building construction project. ECE recognizes that claims have been made with respect to its conduct in the 1999

Building construction project, including the extent of reinforcement of the 1995 Building. (See Exhibit N, Timbie Dep. pp. 48-55; Appendix A-83 to A-88.) Claims based on ECE's work in 1999 are not the subject of this motion. However, no claims may be allowed or pursued with respect to the original construction of the 1995 Building pursuant to the Delaware builder's statute of repose.

Accordingly, ECE respectfully submits that this Court should grant its Motion for Summary Judgment, dismissing and discharging ECE from any claims, crossclaims, third-party claims or other actions seeking damages, contribution or indemnity arising out of its construction services performed in 1995 on the 1995 Building.

14

## CONCLUSION

Any claims against ECE arising out of the construction of the 1995 Building, including the omission of bracing, are barred by the Delaware Builder's Statute of Repose. 10 *Del.C.* § 8127, which extinguishes such claims after the passage of 6 years. The 1995 Building was completed and a final Certificate of Occupancy was issued on December 14, 1995, almost 9 years prior to the filing of the first claims against ECE in this action by Lighthouse on November 19, 2004. Accordingly, ECE respectfully submits that this Court should grant its Motion for Partial Summary Judgment, dismissing and discharging ECE from any claims, crossclaims, third-party claims or other actions seeking damages, contribution or indemnity arising out of its construction services performed in 1995 on the 1995 Building.

This 17 day of August, 2005.

Respectfully submitted,

_____/s/ Natalie M. Ippolito_____
WETZEL & ASSOCIATES, P.C.
Benjamin C. Wetzel III (I.D. No. 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200

15

McLAIN & MERRITT, P.C.


_____/s/ Robert B. Hill_____
Robert B. Hill, Pro Hac Vice
3445 Peachtree Road, Suite 500
Atlanta, GA 30326
(404) 266-9171

Attorneys for Third Party Defendant
East Coast Erectors, Inc.

19485\motions and orders\rev brief of law in sup of msj

16

CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2005, I electronically filed the within Motion for Summary Judgment and Opening Brief and Appendix in Support of Defendant East Coast Erectors, Inc.'s Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

David J. Baumberber, Esquire
Chrissinger & Baumberger
Three Mill Road, Suite 301
Wilmington, DE 19806

Frank E. Noyes, II, Esquire
White & Williams, LLP
PO Box 709
Wilmington, DE 19899-0709

James F. Bailey, Jr., Esquire
Bailey & Associates
Three Mill Road, Suite 306A
Wilmington, DE 19806

Sean J. Bellew, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

Robert K. Beste, Jr., Esquire
Cohen, Seglias, Pallas, Greenhall & Furman, PC
Nemours Building
1007 Orange Street, Suite 205
Wilmington, DE 19801

I hereby certify that on August 17, 2005, I mailed by United States Postal Service, the documents to the following non-registered participants:

Victoria K. Petrone, Esquire
Tighe, Cottrell & Logan, PA
PO Box 1031
Wilmington, DE 19899

Ron L. Pingitore, Esquire
White & Williams, LLP
1800 One Liberty Place
Philadelphia, PA 19103

Steven K. Gerber, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Dana Ostrovsky, Esquire
Coghen, Seglias, Pallas, Greenhall &
    Furman, PC
11th Floor, 1515 Market Street
Philadelphia, PA 19102

Bruce W. McCullough, Esquire
McCullough & McKenty
1225 N. King Street, Suite 1100
PO Box 397
Wilmington, DE 19899

Geoffrey W. Veith, Esquire
Rogut McCarthy Troy, LLC
One First Avenue - Suite 410
Conshohocken, PA 19428

WETZEL & ASSOCIATES, P.A.


_____/s/ Natalie M. Ippolito_____
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200
nippolito@wetzellaw.com