# EXHIBIT "C"

MAY 09 '95 08:11                                                    P.1/2



MASONRY AND GENERAL CONTRACTOR

563 Old Summit Bridge Road
Middletown, DE 19709.

Phone (302) 378-3500 • FAX (302) 378-3503

May 9, 1995

Bill
Del Homes, Inc.
630 W. Division Street
Dover, Delaware 19901

RE: Pre-Engineered Metal Building
    Catalogue Resources Phase I

Dear Bill:

We propose to furnish all labor, material, equipment and supervision necessary to construct a 100,000 Sq. Ft. pre-engineered metal building as outlined below.

A. Building is manufactured by Varco-Pruden Buildings.

B. Building is 200' wide by 500' long with a 23'10" eave height at low eave.

1. Framing for building is a single sloping CB-4 frame. Bay spacing is 50'0". Roof pitch is 1/4" rise for 12" run. Interior bays of building are 50' x 40' grid. Transbay framing for roof secondary.

2. Loading for the building is 30 psf live load, 80 mph wind load and 3 psf collateral loading for mechanical and electrical systems. Building is designed to BOCA 93.

3. Roof decking shall be 22 ga., Type B metal deck, painted.

4. Exterior panels shall be 26 gauge "Panel Rib" configuration, with smooth finish. Panel painted finish is KXL-Kynar, warranted for twenty (20) years against chalking, fading or cracking. Walls are insulated with 3.0" of reinforced, white vinyl faced batt insulation.

5. Front of building has a parapet to 29'4". On side of building Column Line "0" from "A-R" there is a parapet to 29'4".

6. We have included framing for 25 ea. 4 x 8 smoke/skylights.

LH 01320



EXHIBIT
MacLeish-37
DEBRA J. CLIFFORD
4-11-05

A-46

Del Homes Inc.
Pre-Engineered Metal Building
Page Two

    7.  There are 15 each 10' x 10' framed openings for overhead doors.

C.  Roofing system for building is a Carlisle ballasted system with ten (10)
year warranty. There are twenty-five (25) each combination skylight/heat,
smoke vents - 4' x 8'. 040 aluminum edging metal, gutters and downspouts,
wood blocking by others.

D.  We include the following masonry work:

    1.  At north side of building (200 L.F.) and returning 25' on back wall is 8"
concrete masonry units to 10'0" above finished floor.

    2.  Front of building 500 L.F., side 200 L.F., and rear 25' there is 8" split
face concrete masonry units to 10'0" above finished floor.

    3.  On foundation, we include 4 courses of 8" concrete masonry units for
900 L.F. At rear of building we include 9 courses of 12" concrete
masonry units filled with 500 L.F. +/-.

    4.  All concrete masonry units include reinforcing.

Our Total lump Sum Bid for the above work is: Nine Hundred Seventy
Thousand Dollars ($970,000.00)

                Sincerely yours,

                *Robert C. MacLeish*

                Robert C. MacLeish

RCM/jf

LH 01321

# EXHIBIT "D"



**SUB-CONTRACT AGREEMENT**



**GENERAL CONTRACTOR**

**This Agreement,** made this Twenty-Ninth day of June 1995 , by and between East Coast Erectors a corporation created by and existing under the laws of the State of Delaware having its principal office at (street address) P.O. Box 448 in the city of New Castle in the State of Delaware (Subcontractor), and J.W. Walker & Sons, Inc., a corporation created by and existing under the laws of the State of Delaware and having its principal office at 563 Summit Bridge Road, Middletown, DE 19709 (Contractor). J.W. Walker & Sons has heretofore entered into a contract with Del-Homes, Inc.

of 630 West Division Street, Dover, DE 19904 hereinafter called the "owner", to construct Warehouse/Office Addition to Building 200 Enterprise Business Park, Dover, DE hereinafter called the "Project."

**Witnesseth,** That Subcontractor in consideration of the sums to be paid to it by Contractor covenants and agrees to perform all work required by this Contract on the terms and conditions set forth herein.

**1. WORK TO BE PERFORMED**—The work to be performed hereunder is set forth in Appendix A consisting of 1 page(s) attached hereto. This work shall be performed in strict conformity with Appendix A and in accordance with the specifications, addenda, general conditions, special provisions, amendments, drawings, and detailed plans, if any, mentioned therein, as well as the provisions of this Agreement and all subsequent changes made in any such document incorporated by reference in such Appendix that may have been made up to the date of this Agreement. The specifications, drawings and plans are intended to explain each other, and anything plainly required by the specifications and not shown on the drawings or plans, or plainly shown on the drawings or plans and not required by the specifications shall be deemed and considered as if shown on each. Any discrepancy in the figures or drawings shall be immediately referred to the Contractor without whose approval no modification or correction shall be made save only at the risk and expense of the Subcontractor. Unless otherwise specifically provided in Appendix A, Subcontractor shall furnish all labor, materials, tools, equipment, accessories, appurtenances, etc. Any materials, tools, equipment, accessories, appurtenances, etc., furnished to Subcontractor by Contractor pursuant to Appendix A or any such items belonging to, or leased by, Contractor that are used by Subcontractor shall be used by Subcontractor at its sole risk and Contractor shall have no responsibility therefor (and Subcontractor agrees to indemnify Contractor as to any claim arising therefrom) except to such extent, if any, as set forth specifically in Appendix A. Unless otherwise specifically provided in Appendix A, all workmanship, equipment, materials and articles incorporated in the work covered by this Agreement are to be of the best grade of their respective kinds for the purpose, and to the satisfaction of Contractor, the Owner and the Owner's representative, if any, on the work.

**2. PRICE AND PAYMENT**—Contractor shall pay for the materials to be supplied and labor to be performed in accordance with this Agreement, the sum of Two Hundred Twenty-Five Thousand Nine Hundred Twenty Dollars ($225,920.00) and that such sum shall be paid in monthly installments within ten days after Contractor is paid by the Owner as the work progresses. Unless otherwise instructed, no payment shall be made except on bill in triplicate certified by Subcontractor in such manner as may be directed by Contractor and approved by Contractor as for a payment earned; provided, however, that 0 % shall be deducted from each such payment and retained by Contractor until the completion of this Agreement and the final payment is due as hereinafter provided.

**3. FINAL PAYMENT**—The final payment and all other sums, if any, herein provided to be paid shall be deemed to be earned when the work hereby contemplated has been fully and faithfully completed according to the terms of this Agreement and shall normally be due and payable not later than ten days next succeeding the receipt by the Contractor of its final payment from the Owner. The Contractor reserves the right, however, to advance the dates of any payment (including the final payment) under this Agreement.

**4. LABOR**—All labor employed on this project by Subcontractor including supervisory personnel shall be satisfactory to Contractor and Contractor may at any time require the removal from the job of any of Subcontractor's employees upon written notice.

**5. CUTTING, PATCHING AND REPAIRS**—Subcontractor, unless otherwise specified in Appendix A, shall do all cutting, fitting and patching necessary to complete the performance of this agreement. Subcontractor will repair or pay the cost of repair of any damage including without limitation damage to work performed by others caused by the Subcontractor in the performance of this Agreement.

**6. METHOD OF PROCEDURE**—Subcontractor shall immediately obtain all drawings and information necessary to fulfill all work and conditions contemplated in this Agreement. Subcontractor promptly submit for approval to the Contractor, or as directed, all samples and shop drawings which may be required. If at any time drawings or full information have not been furnished Subcontractor shall, from time to time, and at frequent intervals, inform the Contractor in writing as to what drawings or information may still be required to complete the work herein contemplated so as not to delay the progress and completion of work performed by other trades and/or the completion of the contract between the Owner and Contractor. In the event materials and/or services required for the performance of work hereunder are not to be supplied hereunder by Subcontractor, Subcontractor shall provide to Contractor a schedule for delivery or performance or assembly, satisfactory to Contractor, in sufficient time to permit work to proceed in an orderly and expeditious manner.

—1—

**EXHIBIT**
MacLish -3D
DEBRA J. WEAVER
4-11-05

ECE0166

A-48

MACLEISH-030.002



ECE0167



**7. DUE DILIGENCE.**—Subcontractor shall begin the work to be performed under this Agreement promptly and diligently prosecute the same to completion in accordance with a time schedule to be approved by Contractor and in a manner so as not to delay the progress of other trades and/or the completion of the contract between the Owner and the Contractor.

**8. TIME OF THE ESSENCE AND JUSTIFIABLE DELAYS.**—Time is of the essence of this Agreement and Subcontractor shall promptly pay to Contractor all damages, including overhead, of Contractor occasioned by any delay on the part of the Subcontractor in the completion of the work contemplated by this Agreement; provided, however, neither party shall be liable to the other for justifiable delays occasioned by acts of God or other causes beyond the party's reasonable control (but only if written notice shall be promptly given to the other party) or occasioned by revisions to the construction schedule in accordance with Appendix A hereto.

**9. PAYMENT NOT EVIDENCE OF PERFORMANCE.**—No certificate given or payment made under the terms of this Agreement (except the final certificate or final payment) shall be evidence of the performance of this Agreement either wholly or in part, and no payment shall be construed to be an acceptance of defective or improper materials or workmanship.

**10. SUPERVISION AND INSPECTION.**—Subcontractor shall at all times supervise the work contemplated hereby in a manner satisfactory to Contractor. Subcontractor shall furnish promptly at its cost and charge all reasonable facilities, labor and material necessary for the safe and convenient inspection of the work and such tests of materials, equipment and workmanship as may be required by Contractor or its inspectors. Subcontractor shall pay the cost of any additional inspection when material and/or workmanship is not ready to be inspected or tested at the time requested by Contractor or Owner, or, if inspected or tested, is found defective. Contractor shall have full and free access to the shops, plants, factories and other places of business of the Subcontractor and of suppliers of Subcontractor in order that Contractor may inform itself of the general condition and progress of the work.

**11. DEFECTIVE WORK.**—Subcontractor shall promptly repair, replace or otherwise make good any defects, damages or fault in the whole work contemplated by the contract between the Owner and Contractor which may be due to defective materials furnished or improper labor performed under this Agreement and which may be discovered within such period as Contractor is required to repair, replace or otherwise make good defective or improper materials or workmanship on the whole work or within one year after the work hereunder is completed, whichever is later.

**12. INDEMNIFICATION.**—Subcontractor shall indemnify and save harmless Contractor, Owner and Owner's representative from and against any and all claims, demands, suits and actions of every kind and description made or brought against Contractor and/or Owner and/or Owner's representative, and from and against all damages and costs to which Contractor and/or Owner and/or Owner's representative may be put either by reason of injury or death to person(s) or damage to the property of the Contractor and/or Owner and/or Owner's representative, or any other third party, resulting in whole or in part from the acts or omissions (whether singly or jointly) of Subcontractor, its agents, servants, employees, independent contractors, vendors, materialmen or any other person having anything whatever to do in connection with the work of Subcontractor in performance of this Agreement or by reason of violation by Subcontractor of any local, State or Federal law, regulation or executive order. Until all such claims, demands, suits or actions are finally disposed of, Contractor may retain all or any part of any sums due or to become due Subcontractor and apply the same or so much thereof as may be necessary to the satisfaction of any such claims, demands or judgments.

**13. INSURANCE.**—Prior to commencement of work, Subcontractor shall procure and at all times thereafter maintain with insurers acceptable to Contractor and in amounts satisfactory to Contractor and Owner, automobile liability, workmen's compensation and employer's liability, broad form comprehensive general liability, including contractors protective liability, broad form contractual liability insurance, and completed operations coverage and/or such other insurance as may be necessary to protect against all liability that may be chargeable to Contractor, Owner, Owner's representatives, or Subcontractor on account of accidents or injuries caused by acts or omissions of the Subcontractor, his agents, servants, employees and independent contractors, engaged on the work to be performed pursuant to this Agreement. Subcontractor shall, prior to commencing work under this Agreement, deliver certificates or policies to Contractor which shall provide for 30 days' advance written notice by certified mail of cancellation, termination or alteration of any policy. Procurement and delivery of such certificates or policies shall in no way limit or relieve Subcontractor's obligation to indemnify Contractor as provided in Section 12 of this Agreement. If Subcontractor fails to obtain or maintain the necessary insurance covering his operations or to furnish Contractor with satisfactory certificates or policies as well as satisfactory renewals, Contractor may procure such insurance at the cost, charge and expense of Subcontractor.

**14. SAFETY.**—Before commencement of the work to be performed hereunder Subcontractor shall place and at all times thereafter during the continuance of said work maintain proper and sufficient safeguards in, on and around the site of the work and take all other and further precautions for the prevention of accidents. All safety rules and regulations of Contractor and the Owner shall be followed by Subcontractor in the performance of his work covered by this Agreement, including the use of personal protective equipment when required.

**15. RUBBISH.**—Subcontractor shall remove all rubbish from the premises so as to minimize the danger of fire and other accident, and in event of its failure so to do Contractor may remove the same at the expense of Subcontractor.

**16. TAXES AND LAWS.**—Subcontractor shall assume and pay any and all taxes, Federal, State or otherwise, which accrue in the performance of this Agreement, and further agrees to comply with all local, State and Federal laws and regulations to which Contractor may be subject during the performance of its contract with the Owner.

**17. PATENTS.**—Subcontractor shall indemnify and hold and save harmless Contractor and the Owner from liability of any nature or kind whatsoever, including costs and expenses of suit, or for on account of the use or manufacture of any patented invention, articles or appliance furnished or used in the performance of this Agreement.

—2—

ECE0168

A-50

MACLEISH 030.004



ECE0169

A-51

**18. CHANGES**—No alteration, deviation, addition or omission from the work to be performed hereunder shall be made except as authorized by written Change Order or written Extra Work Order as provided herein. Contractor may at any time during the progress of the work, and without notice to any surety, require any alteration, deviation, addition or omission from the work contemplated by this Agreement by a written Change Order signed by the parties. If such change cause an increase or decrease in the amount of the work to be done under this Agreement or in the time required for its performance, an equitable adjustment shall be made in the amount to be paid the Contractor hereunder as stated in such Change Orders extra work may also be performed hereunder pursuant to an Extra Work Order signed by authorized representative of both parties. No demand shall be made on the Contractor because of any alteration, deviation, addition or omission except as specified in such Change order or Extra Work Order.

**19. NO LIENS**—As a prerequisite to any payments, either partial or final, Contractor may require evidence satisfactory to its showing that all bills for labor and/or materials, incurred by Subcontractor, in connection with this Agreement have been paid. Subcontractor for its account and for and on account of all others furnishing labor and material for said work agrees that no liens of any kind shall lie or attach against the work, or the materials or equipment supplied hereunder or the premises whereon the work is being performed. When any payment is to be made under this Agreement, as a condition precedent thereto, Contractor may, in its discretion, require evidence satisfactory to it, to be furnished it showing what, if any, liens against said work, materials or equipment have been or can be acquired for or on account of any labor done or materials or equipment provided for said work. If at any time it shall appear that there is a lien or any other claim or demand of any kind whatsoever for which Subcontractor, the work, or the materials or equipment provided therefor, or the premises, may be liable or be so held and for which Subcontractor or its subcontractor, if any, is chargeable, Contractor may, in its discretion, retain out of any money due or to become due hereunder a sum sufficient in its judgment to indemnify and protect it against any and all such liens, claims or demands.

**20. TERMINATION**—

(a) FOR LACK OF DUE DILIGENCE—Should Subcontractor at any time fail in any respect to proceed with promptness and diligence in the prosecution of the said work, or fail to supply satisfactory and sufficient material and/or labor, or fail in the performance of any of the covenants or agreements herein contained by it to be done, kept, observed or performed, then and in any such event Contractor shall be at liberty to provide any such materials or perform any such work or labor and to deduct the cost thereof from any money then or thereafter to become due to Subcontractor under this Agreement. In any such event, Contractor shall also be at liberty to terminate this Agreement and to enter upon and take possession of the premises and of all materials thereon (including without limitation finished material and equipment to be installed), which, upon any such default, are hereby sold, assigned and transferred to Contractor, and to provide all other necessary materials, equipment, tools and appliances and complete or employ others to complete the work comprehended by this agreement at the cost, charge and expense of Subcontractor. In event said Agreement is terminated and the work is completed as herein provided, Subcontractor shall be liable to Contractor for Contractor's costs and overhead and legal expenses and a profit of 10% of such of said work as may be completed by Contractor or any subcontractor, and any or all of said sums may be deducted at any time and from time to time from any sum due or thereafter to become due Subcontractor. Should said costs, expenses and profit exceed any sums due the Subcontractor, it and its surety shall be liable to Contractor for any such expense.

(b) TERMINATION FOR OTHER REASONS—Should Contractor's contract with the Owner be terminated or cancelled, pursuant to the terms thereof, or should conditions arise which make it advisable to cease work under this Agreement, Contractor may terminate this Agreement by written notice to Subcontractor and such termination shall be effective in the manner specified in said notice. Upon such termination it is agreed that the obligations of this Agreement shall continue as to work already performed and as to bona fide obligations assumed by the Subcontractor prior to date of cancellation or termination, plus expenses, having prior approval of Contractor, incurred subsequent to date of cancellation or termination. Subcontractor shall be entitled to pro Rata compensation for the portion of the subcontract already performed, including materials for which it has made firm contracts, it being understood that Contractor shall be entitled to that material and it being further understood that no amount will be allowed for anticipated profit on the terminated work. Nothing in this paragraph shall be deemed to modify, waive, impair or restrict the rights and remedies which Contractor would otherwise have in the event of default by Subcontractor in the performance of any of his obligations under this Agreement.

**21. ASSIGNMENT**—This Agreement shall not be assigned or sublet, in whole or in part, without the written consent of Contractor. No money due or to become due under this Agreement may be assigned without the written consent of Contractor.

**22. GOVERNING LAW**—This agreement shall be and is deemed to be one under the laws of the state of Delaware only, and shall be construed and given effect in accordance with the laws of that state and not otherwise.

*In Witness Whereof,* the parties hereto have caused these presents to be executed by their respective officers in their behalf first duly authorized the day and year first above written.

WITNESS:

ATTEST:                          (SEAL)

_____
Title:

ATTEST:                          (SEAL)

_____

East Coast Erectors
Subcontractor

_____
By

J.W. Walker & Sons, Inc.
Contractor

_____
By

--3--

**ECE0170**

APPENDIX "A"
DEL-HOMES
CATALOGUE RESOURCES

Erect pre-engineered steel and roof decking as shown on Varco-Pruden drawings (39 pages) dated 6-08-95. Furnish and install 20 roof frames for 4 x 8' skylights and one roof hatch 2'6" x 3'0". Furnish and install approximately 24,000 Sq. Ft. of Mezzanine steel

ECE0171

# EXHIBIT "E"

MOORE-014.001

JUN. 18. 1998   11:13AM   P 1

FROM : CATALOG*RESOURCES*INC                    P^ONE NO. : 3027418575

98084.02

DOUG VAN SANT, FACILITIES MANAGER
97 COMMERCE WAY, DOVER, DE 19904
OFFICE TELEPHONE:      302-741-8502
C.R.I. FAX:            302-678-9200



# **CATALOG RESOURCES, INC.**

# Fax

| To: | **GREG MOORE / BM20R** | From: | DOUG VAN SANT |
|---|---|---|---|
| Fax: | 734-7965 | Pages: | [Click here and type # of pages] |
| Phone: | N/A | Date: | June 18, 1998 |
| Re: | **EXPANSION SKETCHES** | CC: | N/A |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:** *Greg:*

*Here are copies of 2 sketches I prepared for consideration*

*of the proposal to add an extension to our main building's*

*office section...for what they're worth.*

*Also, I am concerned about parking. We're going to need*

*probably a couple hundred new spaces provided on this*

*site as we will be abandoning the 106 now fully utilized at*

*Bldg. 200, and the 140 at Bldg. 100 (we didn't use all those).*

*I will work up a maximum shift employee number for spaces*

*required, and forward that to you when ready.*

*Call me anytime for further info. Thanks.*

Doug /S.

**EXHIBIT**
MOOre-14
DEBRA J. WEAVER
3-15-05

BMG01777

A-54

MOORE-014.002

JUN. 18. 1998  11:14AM  P 2

FROM : CATALOG*RESOURCES*INC          PHONE NO. : 3027418575



PROPOSED Z-STY.
ADDITION TO
BLDG. 1          1"=100'

BMG01778



PRELIMINARY    1"=100'

BMG01779

EXHIBIT "F"

# CERTIFICATE OF OCCUPANCY

## THE CITY OF DOVER, DELAWARE

PRELIMINARY ☐
FINAL ☒

DATE OF ISSUE __December 14, 1995__ EXPIRATION DATE __NONE__ NO. **4809**

CERTIFICATE OF OCCUPANCY, AS INDICATED ABOVE, IS HEREBY ISSUED IN ACCORDANCE WITH THE CITY OF DOVER ZONING CODE FOR STRUCTURE LOCATED IN __East Dover__ HUNDRED MAP SECTION ON

__97 Commerce Way__ STREET. DEVELOPMENT __Enterprise Business Park__

SECTION _____ BLOCK _____ LOT _____ OR OTHER DESCRIPTION _____

TO BE USED AS __Catalog Resources__

PROPERTY IS NOW ZONED AS __IPM__ THIS IS A NON-CONFORMING USE

WATER PERMIT NO. _____

BUILDING PERMIT NO __013920__

PLUMBING PERMIT NO __014449__

OWNERS NAME __Del-Homes Group L.L.C.__

OWNERS ADDRESS __630 W. Division Street, Dover, DE 19901__

APPROVED - BUILDING INSPECTOR _____

OWNER'S NAME __Del-Homes Group LLC__

OWNER'S ADDRESS __630 W. Division Street, Dover, DE 19901__

Building Permit No. __~~13920~~ 13920__

Plumbing Permit No. __14449__
__14522__

x _Laurie L Forbes_
SIGNATURE OR OWNER

__Impact fee Paid 10/25/95   18,200.00 City__
__10,998.00 County__
__104.00 Adm fee__

STATE OF DELAWARE
THE CITY OF DOVER

Deponent being duly sworn, says that he is the owner or authorized agent for whom the requested Certificate of Occupancy is to be issued, and that all information given on this form by him is correct and that all work is or will be done in accordance with all State Laws and City of Dover Ordinances.

Sworn to this __25th__ day of __October__ AD 19 __95__

x _Laurie L Forbes_
SIGNATURE OF OWNER

---

LOT Area _____ SF

Front Yard _____ Feet

Side Yard _____ Feet

Rear Yard _____ Feet

Height _____ Feet

Sewage Disposal _____

Structure Area _____ SF

No. of Stories _____ Feet

No. of Family Units _____

Parking Space Provided _____

Loading Space Provided _____

APPROVAL OF CITY HEALTH INSPECTOR _____

---

## RECORD OF ACTION

PRELIMINARY CERTIFICATE _____ Approved _____ 19 _____ No. _____

Denied _____ 19 _____ Cause _____

FINAL CERTIFICATE _____ APPROVED __Dec 15__ 19 __95__ No. _____

DENIED _____ 19 ___ CAUSE _____

by _Anthony J. DePrima_
BUILDING INSPECTOR

# EXHIBIT "G"



OLDS-016.001



EXHIBIT
Olds-16
DEBRA J WEAVER
3-15-05

A-58

EXHIBIT "H"

Oct 30 03 03:48p    Young & Malmberg         (302)672-7336         p.3
OCT-27-2003(MON)  17:30  DEL_HOMES.INC.      (FAX)3026981243      P.002/009

T H E    A M E R I C A N    I N S T I T U T E    O F    A R C H I T E C T S



*AIA Document A101*

# Standard Form of Agreement Between Owner and Contractor

*where the basis of payment is a*

*STIPULATED SUM*

### 1987 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*
The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.
This document has been approved and endorsed by The Associated General Contractors of America.

---

## AGREEMENT

made as of the 2ND                        day of  February                        in the year of
Nineteen Hundred and Ninety Nine

**BETWEEN the Owner:**        Del-Homes Group LLC
*(Name and address)*          1575 McKee Road, Suite 202
                              Dover, DE 19904

and the Contractor:           Lighthouse Construction, Inc.
*(Name and address)*          630 West Division Street, Suite 202
                              Dover, DE 19904

The Project is:               CRI-Expansion
*(Name and location)*         97 Commerce Way
                              Dover, DE 19904

The Engineer is:              Becker, Morgan, Moore, Olds & Richter
*(Name and address)*          738 South Governors Avenue
                              Dover, DE 19903

The Owner and Contractor agree as set forth below.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006            **A101-1987  1**

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

A-59                                                            P-067

Oct. 30 03 03:48p     Young & Malmberg          (302)672-7336          p.4
OCT-27-2003(MON)  17:31  DEL_HOMES.INC.         (FAX)3026981243     P.003/009

## ARTICLE 1
### THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

## ARTICLE 2
### THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows: Design/Build A 250,000 Ø Expansion of existing Catalog Resources.

## ARTICLE 3
### DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1** The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

Upon Notice to Proceed.

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**3.2** The Contractor shall achieve Substantial Completion of the entire Work not later than August 30, 1999
*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*

. subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987     A101-1987   2
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

UNLICENSED photocopying violates U.S. copyright laws and is subject to legal prosecution.

### ARTICLE 4
### CONTRACT SUM

**4.1** The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum of
**Five Million Nine Hundred Eighty Five Thousand** Dollars
(**$ 5,985,000.00** ), subject to additions and deductions as provided in the Contract Documents.

**4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date until which that amount is valid.)*

Base Bid

**4.3** Unit prices, if any, are as follows:

| | | |
|---|---|---|
| A. | Undercut & replace w/ select material: | $14.95 per CY |
| B. | Undercut & replace w/ 57A Stone: | $33.00 per CY |
| C. | Furnish Select Fill: | $ 9.20 per CY |

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006     A101-1987   3

## ARTICLE 5
## PROGRESS PAYMENTS

**5.1**  Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**5.2**  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.3**  Provided an Application for Payment is received by the Architect not later than the **25th** day of a month, the Owner shall make payment to the Contractor not later than the **25th** day of the **following** month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than _____ days after the Architect receives the Application for Payment.

**5.4**  Each Application for Payment shall be based upon the schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.5**  Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.6**  Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**5.6.1**  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of **N/A** percent ( _____ %). Pending final determination of cost to the Owner of changes in the Work, amounts not in the dispute may be included as provided in Subparagraph 7.3.7 of the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

**5.6.2**  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of **N/A** percent ( _____ %);

**5.6.3**  Subtract the aggregate of previous payments made by the Owner; and

**5.6.4**  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of the General Conditions.

**5.7**  The progress payment amount determined in accordance with Paragraph 5.6 shall be further modified under the following circumstances:

**5.7.1**  Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to **100** percent ( _____ %) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims; and

**5.7.2**  Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of the General Conditions.

**5.8**  Reduction or limitation of retainage, if any, shall be as follows:

*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Subparagraphs 5.6.1 and 5.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

## ARTICLE 6
### FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 7
### MISCELLANEOUS PROVISIONS

**7.1** Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**7.3** Other provisions:

## ARTICLE 8
### TERMINATION OR SUSPENSION

**8.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

**8.2** The Work may be suspended by the Owner as provided in Article 14 of the General Conditions.

---

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006    A101-1987  5

Oct 30 03 03:49p       Young & Malmberg           (302)672-7336         P.8
OCT-27-2003(MON)  17:32   DEL_HOMES.INC.          (FAX)3026981243       P.007/009

## ARTICLE 9
### ENUMERATION OF CONTRACT DOCUMENTS

**9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**9.1.1** The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

**9.1.2** The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition.

**9.1.3** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated
_____, and are as follows:

| Document | Title | Pages |
|----------|-------|-------|
|          |       |       |

**9.1.4** The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---------|-------|-------|
| N/A     |       |       |

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA™ • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006          A101-1987   6

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

Oct. 30 03 03:49p    Young & Malmberg    (302)672-7336    p.9
OCT-27-2003(MON)  17:33  DEL_HOMES.INC.    (FAX)3026981243    P.008/009

9.1.5  The Drawings are as follows, and are dated                                       unless a different date is shown below:
(Either list the Drawings here or refer to an exhibit attached to this agreement.)

| Number | Title | Date |
|---|---|---|
| C1 | Cover | 1/27/99 |
| C2 | Grading Plan | 1/29/99 |
| C3 | Utility Plan | 1/29/99 |
| C4 | S & E Control Plan | 1/29/99 |
| C5 | S & E Details | – |
| C6 | Construction Details | – |
| C7 | Landscape Plan | 2/14/99 |
| S1 | Foundation Plan | 3/5/99 |
| S2 | Roof Framing Plan | 3/5/99 |
| S3 | Sections & Details | 3/5/99 |
| A2.1 | Floor Plan | 2/1/99 |

9.1.6  The addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|

None

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

AIA  DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006        A101-1987   7

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

P-073

**9.1.7** Other documents, if any, forming part of the Contract Documents are as follows:

(List here any additional documents which are intended to form part of the Contract Documents. The General Conditions provide that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER                          CONTRACTOR

_(Signature)_                  _(Signature)_

John T. Beiser, Manager        Robert C. MacLeish, President
_(Printed name and title)_     _(Printed name and title)_

**AIA**  CAUTION: You should sign an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA • ©1987      A101-1987   8
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

A-66

P-074