## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY a/s/o Ezibz.com, Inc./Avacet, Inc., EZIBA SECURITIES CORP., and MILLERS CAPITAL INSURANCE COMPANY a/s/o Del-Homes Catalog Group LLC, | : : : : : : |
| Plaintiffs, | : : |
| v. | : |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., O'DONNELL, NACCARATO & MACINTOSH, INC., and EAST COAST ERECTORS, INC. | :C.A. No. 04-339/04-1322-JJF :(Consolidated) : : : |
| Defendants. | : : |
| and | : **JURY TRIAL OF TWELVE** : **DEMANDED** |
| LIGHTHOUSE CONSTRUCTION, INC., | : : |
| Defendant and Third-Party Plaintiff, | : : : |
| v. | : : |
| EAST COAST ERECTORS, INC., | : : |
| Third-Party Defendant. | : : |

## MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT[1]

Plaintiff, Millers Capital Insurance Company as subrogee of Del-Homes Catalog Group, LLC, by and through its attorneys White and Williams LLP, hereby moves for leave to file the attached proposed Second Amended Complaint to include a claim of Gross Negligence against defendants Lighthouse Construction, Inc., O'Donnell, Naccarato & MacIntosh, Inc. and East Coast Erectors, Inc. Grounds for the motion are as follows:

---

[1] Plaintiff waives its right to file an opening brief in support of this Motion pursuant to D.Del. LR 7.1.2. Plaintiff reserves its right to file a brief in reply to any opposition to this Motion.

1.   This action arises from a building roof collapse at plaintiff's subrogor's commercial facility in Dover, Delaware where plaintiff's subrogor leases office and warehouse space to others.

2.   In or about 1999, defendants Lighthouse Construction, Inc., Becker Morgan Group, Inc., East Coast Erectors, Inc. and O'Donnell, Naccarato & Macintosh, Inc. designed, engineered and constructed a new building at the facility ("1999 project").  The new building was erected adjacent to an existing building with a lower roofline.  The existing building was constructed in 1995 ("1995 building").

3.   On February 17, 2003 the 1995 building collapsed due to a snow drift load that was created on its rooftop where the two buildings met and at a point where the roofline of the new building was significantly higher than the 1995 building.[2]

4.   On October 1, 2004, plaintiff filed an action against Lighthouse Construction, Inc. ("Lighthouse"), Becker Morgan Group, Inc., and O'Donnell, Naccarato & Macintosh, Inc. ("ONM") based on their negligent acts and/or omissions in the course of designing, engineering and/or constructing the new project.

5.   On November 19, 2004, Lighthouse filed an Answer and Third Party Complaint joining third-party defendant East Coast Erectors, Inc. ("East Coast").  According to the facts alleged in the Third Party Complaint, East Coast participated in designing and/or constructing the new project.

---

[2] Exhibit A attached hereto is an expert report submitted on behalf of ONM admitting that the 1995 building collapsed due, in part, to the snow drift load and that the building was insufficiently strengthened in 1999.

6.  On December 4, 2004 this Court granted a Joint Motion to Consolidate and plaintiff's action was consolidated with a related case captioned <u>Federal Insurance Company v. Lighthouse Construction, et al.</u> (C.A. No. 04-339).

7.  On June 2, 2005 this Court granted Plaintiff's Motion For Leave to File an Amended Complaint to assert direct claims against third-party defendant East Coast.

8.  The Stipulated Modification to Rule 16 Scheduling Order (granted September 1, 2005) states that all motions to amend pleadings shall be filed on or before September 30, 2005.

9.  Discovery has confirmed that Lighthouse was the General Contractor for the 1999 project and hired East Coast to, <u>inter alia</u>, evaluate the 1995 building to support the anticipated snow drift.  East Coast, in turn, consulted with ONM to participate in the evaluation of the 1995 building.

10.  Discovery has revealed that Lighthouse, East Coast and ONM knowingly and/or unlawfully failed to comply with local building requirements, building codes and industry standards during the 1999 project by failing to secure/produce construction documents sealed by a professional engineer licensed to practice in the State of Delaware.[3]  Additionally, a Building

---

[3] Michael Williams, principal of East Coast, testified that the one and only construction drawing for modifications to the 1995 building was not sealed by a licensed engineer.  Mr. Williams also testified that he recognized the need for drawings that involved structural modifications to be sealed.  Further, he agreed that the modifications to the 1995 building were structural and that Lighthouse never requested a sealed construction drawing for the modifications.  See Exhibit B, dep. pages 52-57, 95, 103-110.  Exhibit E is a copy of the January 27, 1997 Regular Council Meeting minutes for the City of Dover wherein the BOCA National Building Code 1996 is adopted, including the proclamation that it shall be unlawful to violate any provisions of the Code.  Also attached as part of Exhibit E are excerpts from the Code.  Specifically, Section 107, which requires a building permit before adding or altering a structure and Section 114 requiring that all construction documents be prepared and sealed by a registered design professional.

Permit was not secured from the City of Dover, as required, for structural modifications intended to reinforce the lower level existing building. [4]

11. Discovery has also revealed that the failures of Lighthouse, East Coast and ONM in, inter alia, securing/producing sealed construction drawings from a licensed professional in the State of Delaware and/or a Building Permit allowed the 1999 project to be improperly and/or unlawfully constructed and, as a result, the 1995 building collapsed under a snow load imposed by the new building. [5]

12. It cannot be disputed that Lighthouse, East Coast and ONM knowingly exposed the 1995 building and a workforce of several hundred people to the known collapse danger presented by creating a snow drift on a lower level building, yet failed to secure/produce a structural analysis of the 1995 building sealed by a licensed engineer in the State of Delaware. [6]

13. The Delaware Supreme Court has defined gross negligence as a "higher level of negligence representing an extreme departure from the ordinary standard of care." Browne v. Robb, 583 A.2d 949, 953 (Del.1990). Plaintiff seeks to amend its First Amended Complaint to include a claim based on Gross Negligence against Lighthouse, East Coast and ONM for their extreme departure from the ordinary standard of care by: a) knowingly creating a roof collapse risk to property and persons; b) failing to secure a Building Permit and/or sealed construction plans for the 1995 building modifications to protect against the known risk; c) failing to

---

[4] Exhibit C is a copy of Plaintiff's expert report by Frank Davis that identifies the defendants' failure to secure a building permit for the 1999 project. Charles Timbie, P.E., an expert retained by Plaintiffs, also offered his opinion at deposition that the 1999 project should have included a building permit and sealed drawings for the 1995 building modifications, See, e.g., Exhibit D, dep. pages 52-57.

[5] See, e.g., Exhibits A and C.

[6] Robert MacLeish, principal of Lighthouse, testified at deposition that he recognized the fact that a snow drift was created on the 1995 building with the construction of the 1999 building. See, e.g., Exhibit F, dep. pages 174-176. Michael Williams, principal of East Coast, also testified that the roof height differential caused a snow drift on the 1995 building. See, e.g., Exhibit B, dep. pages 52-57.

adequately reinforce the 1995 building; and d) failing to secure a sealed structural analysis of the 1995 building.

14.  The applicable building code for the City of Dover, BOCA 1996, specifically required sealed construction drawings and a Building Permit before the commencement of the 1999 project, including the alteration and evaluation of the 1995 building, to protect the owners and occupants of the buildings from, inter alia, collapse.

15.  Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend its pleading by leave of court, which leave should be given freely as justice so requires.  PE Corporation v. Affymetrix, Inc., 2001 WL 1180280 (D.Del. Sept. 27, 2001) (attached).  Such amendments should relate back to the date of the original filing where the claims in the amended pleadings arose from the same conduct, transaction or occurrence set forth in the original pleading.  Yorden v. Flaste, 374 F.Supp. 516 (D. Del. 1974).

16.  Plaintiff has a good faith basis in asserting this additional claim.

17.  Plaintiff does not seek to file a Second Amended Complaint to cure deficiencies in amendments previously allowed.

18.  Defendants will not suffer undue prejudice by virtue of the amendment.

19.  Pursuant to Delaware Federal Local Rule 15.1, one original and one copy of plaintiff's Second Amended Complaint in its final form is attached as Exhibit G and one copy of plaintiff's Second Amended Complaint indicating additions and subtractions is attached as Exhibit H.

WHITE AND WILLIAMS LLP

BY: _____

Frank E. Noyes, Esquire (#3988)
824 North Market Street, Suite 902
Wilmington, DE 19899
302-467-4511
*Attorney for Plaintiff Millers Capital*
*Insurance Company*

Dated:  September 30, 2005

**Of Counsel**:
Ron Pingitore, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19135-7395
215-864-6324

- 6 -

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

**(Cite as: 2001 WL 1180280 (D.Del.))**


**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.


United States District Court, D. Delaware.
PE CORPORATION and Competitive
Technologies, Inc., Plaintiffs,
v.
AFFYMETRIX, INC., Defendant and Third-Party
Plaintiff,
v.
PERSEPTIVE BIOSYSTEMS, INC., Third-Party
Defendant.
**No. Civ.A. 00-629-SLR.**

Sept. 27, 2001.

Steven J. Balick, and Steven T. Margolin, of Ashby
& Geddes, Wilmington, Delaware, David A. Kalow
, John J. Santalone, Philip A. Byler, and William D.
Schmidt, of Kalow & Springut LLP, New York,
New York, for Plaintiffs and Third-Party
Defendant, of counsel.

Thomas P. Preston, of Reed Smith LLP,
Wilmington, Delaware, Ronald J. Schultz, Cole M.
Fauver, and Nicholas S. Boebel, of Robins, Kaplan,
Miller & Ciresi L.L.P., Minneapolis, Minnesota.
Robert J. Koch, of Fulbright & Jaworski,
Washington, D.C., for Defendant, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Plaintiffs PE Corporation ("PE") [FN1] and
Competitive Technologies, Inc. ("Competitive
Technologies") filed this action on July 5, 2000
against defendant Affymetrix, Inc. ("Affymetrix")
alleging infringement of United States Patent Nos.

4,458,066; 4,500,707; 5,132,418; 5,153,319 and
4,973,679. Currently before the court are
defendant's motion to dismiss for lack of subject
matter jurisdiction (D.I.20) and plaintiffs' motion to
amend the complaint. (D.I.29) For the following
reasons, the court shall grant both motions.

> FN1. Although PE apparently has changed
> its corporate name, the court will refer to it
> as PE, consistent with the briefing on its
> motion.

II. BACKGROUND

In 1981, University Patents, Inc., now Competitive
Technologies, granted a license to the patents in suit
to Applied Biosystems, Inc. ("ABI"), which was
later acquired by PE Corporation (N.Y.)
("PE(N.Y.)"). In 1988, the parties amended the
agreement to grant ABI, now PE(N.Y.), "a
worldwide, exclusive (even as to UPI [now
Competitive Technologies] ), unrestricted and fully
paid-up license" to the patents in suit, including the
right to grant sublicences. [FN2] Significantly, the
agreement of amendment also granted ABI (now
PE(N.Y.)) the

> FN2. This exclusive license was subject to
> a nonexclusive license granted to Beckman
> Instruments, Inc.

sole right and responsibility to file, refile,
prosecute, extend, maintain, defend and prosecute
interferences and/or appeals for the Licensed
Patents in various Patent Offices throughout the
world....
As of June 30, 1988 and thereafter, ABI shall
have the sole right and responsibility to bring or
defend patent infringement and patent validity
suits and otherwise defend the Licensed Patents
against third parties in suits thereupon, and shall
be solely responsible for all costs and expenses
therefor incurred after June 30, 1988, including,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

**(Cite as: 2001 WL 1180280 (D.Del.))**

but not limited to, attorney's fees and expenses, court costs, expert fees and other trial expenses and any assessments of damages for claims or counterclaims related to the Licensed Patents. (D.I.34, Ex. 1-D)

In July 2000, PE and Competitive Technologies filed this action against Affymetrix. On January 30, 2001, Affymetrix filed a motion to dismiss, alleging that neither PE nor Competitive Technologies has standing to sue. On January 25, 2001, prior to filing the motion to dismiss, Affymetrix instituted a declaratory judgment action over the patents in suit in the Southern District of New York.

On February 9, 2001, plaintiffs requested Affymetrix's permission to substitute PE(N.Y.) for PE as plaintiff in this action. Affymetrix did not agree to plaintiffs' request. Consequently, on February 16, 2001, plaintiffs filed a cross-motion to amend the complaint to add PE(N.Y.) as a plaintiff.

> FN3. PE(N.Y.) is a wholly-owned subsidiary of PE.

III. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

A. Standard of Review

Federal Rule of Civil Procedure 15(a) allows courts to freely permit amendments to complaints as justice requires. [FN4] Courts commonly permit amendments where clerical mistakes are involved and the errors were made in good faith. Courts are also encouraged to grant pretrial amendments so that parties may fully present the issues. *See Moore's Federal Practice,* § 15.14[1]. An amended complaint that contains an additional or substituted party will only relate back to the original complaint's filing date if it satisfies the requirements of Federal Rule of Civil Procedure 15(c)(3). [FN5]

> FN4. Rule 15(a) provides, in pertinent part:
> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or,

if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

> FN5. Rule 15(c)(3) provides, in pertinent part:
> An amendment of a pleading relates back to the date of the original pleading when ... the amendment changes the party or the naming of the party against whom a claim is asserted if [the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment
> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
> (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

B. Discussion

**\*2** Plaintiffs argue that they should be permitted to amend the complaint because their error was made in good faith. Specifically, plaintiffs claim that the numerous and confusing mergers and name changes of PE and PE(N.Y.) led to designating the wrong party as a plaintiff. (D.I.30, Ex. A) The court finds no evidence to suggest that plaintiffs' failure to designate PE(N.Y.) as a plaintiff in this litigation was anything but a clerical error. Therefore, based on the record presented, plaintiffs' motion to amend the complaint to add PE(N.Y.) as a plaintiff is granted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

**(Cite as: 2001 WL 1180280 (D.Del.))**

The next issue is whether the amended complaint relates back to the original complaint's filing date of July 5, 2000, or maintains the filing date of the motion to amend, February 16, 2001. Plaintiffs rely on *Calgon Corp. v. Nalco Chem.,* 726 F.Supp. 983 (D.Del.1989) and *Schering Corp. v. Amgen, Inc.,* 969 F.Supp. 258 (D.Del.1997) to support their position that the amended complaint should relate back to the original filing date. *Schering* and *Calgon* are inapposite, however, because they involve licensees who possessed some, but not all, substantial rights in the patents at issue and who failed to join the patent owners. The present case concerns the addition of the party possessing all substantial rights to the patent. Therefore, to determine whether the amended complaint relates back to July 2000, the court must resolve the issues raised by defendant's motion to dismiss, that is, whether the original plaintiffs had standing to sue in the first instance.

## IV. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Standard of Review

Standing in a patent infringement case is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). "The question of standing to sue is a jurisdictional one." *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551 (Fed.Cir.1995). Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990).

It is well settled that standing cannot be "inferred argumentatively from averments in the pleadings," *Grace v. Am. Cent. Ins. Co.,* 109 U.S. 278, 284 (1883), but rather "must affirmatively appear in the

record." *Mansfield, C. & L.M.R. Co. v.. Swan,* 111 U.S. 379, 382 (1884). Additionally, the party who seeks the exercise of jurisdiction in its favor has the burden of clearly alleging facts demonstrating that it is a proper party to invoke judicial resolution of the dispute. *Id.* In the present case, the court must determine whether there is affirmative evidence in the record indicating that PE and Competitive Technologies have standing to sue Affymetrix for patent infringement.

### B. Discussion

**\*3** Article III of the Constitution requires a party invoking federal jurisdiction to establish that: 1) it has suffered an injury-in-fact that is concrete and actual or imminent; 2) the injury is causally related to the actions of the defendant; and 3) the harm is redressable by a favorable decision. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1346 (Fed.Cir.2001) (*citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Standing doctrine embraces not only this "three-prong Article III standing test," but also "judicially self-imposed limits, known as prudential limits, on the exercise of jurisdiction." *Id.* at 1348. Thus, "[a]s a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements." *Id.*

Upon reviewing the record, the court finds that PE lacked constitutional standing to sue Affymetrix because it had no proprietary interest in the patents in suit. The question remains whether Competitive Technologies had constitutional standing, having transferred substantial rights in the patents to PE(N.Y.).

As recognized by the Federal Circuit in *Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1131 (Fed.Cir.1995), "[t]he right to sue for infringement is ordinarily an incident of legal title to the patent." Consequently, the issue generally framed for the courts is whether a licensee has obtained sufficient rights in the patent to be entitled to seek relief from infringement without joining the patent owner. If

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

**(Cite as: 2001 WL 1180280 (D.Del.))**

that were the issue presented by the parties in the present case, the answer would be self-evident: PE(N.Y.) has obtained sufficient rights in the patent to bring an infringement suit in its own name. Indeed, the license of record specifically grants to PE(N.Y.) "a worldwide, exclusive (even as to [Competitive Technologies] ), unrestricted and fully paid-up license" and the "sole right and responsibility to bring or defend patent infringement and patent validity suits and otherwise defend the Licensed Patents against third parties in suits thereupon...." (D.I. 34, Ex. 1-D at 4) (emphasis added) Thus, Competitive Technologies, as patent owner, cannot maintain suit in its own name and is not a necessary party to this litigation.

The court recognizes that, because Competitive Technologies retains legal title to the patents in suit and receives royalties from Beckman Instruments, Inc., under most circumstances one would conclude that Competitive Technologies retains sufficient proprietary interests in the patents to participate in the infringement action. Nevertheless, the parties at bar entered into an agreement whereby Competitive Technologies gave up the right to participate in lawsuits to protect the patents in suit. Given these circumstances, the court finds it illogical to essentially determine the proper forum for this litigation based on the fact that the patent owner filed suit in Delaware first, when the patent owner did not have the right to file suit at all.

V. CONCLUSION

**\*4** For the reasons stated, although plaintiffs' motion to amend the complaint is granted, the court finds that the amended complaint does not relate back to July 2000. Therefore, the New York action is the first-filed action and, under the reasoning of *Crosley Corp. v.. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941), defendant's motion to dismiss is granted.

ORDER
At Wilmington, this 27th day of September, 2001, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that plaintiffs' motion to amend the complaint (D.I.29) is granted, but the amended complaint does not relate back to the filing date of the original complaint. Thus, defendant's motion to dismiss for lack of subject matter jurisdiction (D.I.20) is granted.

Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00629  (Docket)
                                    (Jul. 05, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY a/s/o Ezibz.com, Inc./Avacet, Inc., EZIBA SECURITIES CORP., and MILLERS CAPITAL INSURANCE COMPANY a/s/o Del-Homes Catalog Group LLC, | : : : : : : |
| Plaintiffs, | : : |
| v. | : |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., O'DONNELL, NACCARATO & MACINTOSH, INC., and EAST COAST ERECTORS, INC. | : C.A. No. 04-339/04-1322-JJF : (Consolidated) : : |
| Defendants. | : : |
| and | : : |
| LIGHTHOUSE CONSTRUCTION, INC., | : **JURY TRIAL OF TWELVE** : **DEMANDED** : |
| Defendant and Third-Party Plaintiff, | : : : |
| v. | : : |
| EAST COAST ERECTORS, INC., | : : |
| Third-Party Defendant. | : : |

## ORDER

**AND NOW**, upon consideration of plaintiff, Millers Capital Insurance Company as subrogee of Del-Homes Catalog Group, LLC's, Motion for Leave to File a Second Amended Complaint, and any response and opposition thereto, it is hereby **ORDERED** this _____ day of _____, 2005, that plaintiff's motion is **GRANTED**.

BY THE COURT:

_____

J.

## CERTIFICATE OF SERVICE

I, Frank E. Noyes, hereby certify that on this 30th day of September, 2005, I served a true and correct copy of this Motion for Leave to File A Second Amended Complaint upon the following counsel:

By CM/ECF e-filing:

James F. Bailey, Esquire
Bailey & Associates, P.A.
716 Tatnall Street
P.O. Box 2034
Wilmington, DE 19899-2034

Victoria K. Petrone, Esquire
Tighe, Cottrell & Logan, P.A.
First Federal Plaza
P.O. Box 1031
Wilmington, DE 19899

David L. Baumberger, Esquire
Chrissinger & Baumberger
Three Mill Road
Suite 301
Wilmington, DE 19806

Natalie M. Ippolito
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805

Bruce W. McCullogh, Esquire
McCullough  & McKenty
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington ,DE 19899

By First Class Mail postage pre-paid:

Geoffrey  W. Veith, Esquie
Rogut, McCarthy Troy, LLC
One First Avenue-Suite 410
Conshohocken, PA 19428

Dana Ostrovosky, Esquire
Cohen Seglias, Pallas, Greenhall
& Furman, P.C.
11th Floor, 1515 Market St.
Philadelphia, PA 19102

Steven K. Gerber, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Robert K. Beste, Jr. Esquire
Cohen, Seglias, Pallas, Greenhall &
Furman, P.C.
Nemours Building
1007 Orange Street, Suite 205
Wilmington, DE 19801

**WHITE AND WILLIAMS LLP**

BY: _____

Frank E. Noyes, Esquire (#3988)
824 North Market Street, Suite 902
Wilmington, DE 19899
302-654-0424
*Attorney for Plaintiff Millers Capital
Insurance Company*

- 2 -