# EXHIBIT G

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILLERS CAPITAL INSURANCE COMPANY<br>a/s/o DEL-HOMES CATALOG GROUP, LLC<br>        Plaintiffs, | :<br>:<br>:<br>: |
| v. | : |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER<br>MORGAN GROUP, INC., O'DONNELL,<br>NACCARATO & MACINTOSH, INC., and EAST<br>COAST ERECTORS, INC. | :<br>:<br>:<br>:<br>: |
|         Defendants. | : C.A. No. 04-1322-JJF<br>:(Consolidated) |
|    and | :<br>: |
| LIGHTHOUSE CONSTRUCTION, INC., | : |
|         Defendant and Third-Party<br>        Plaintiff, | : **SECOND AMENDED**<br>: **COMPLAINT**<br>:<br>: |
|    v. | :<br>: |
| EAST COAST ERECTORS, INC., | : **JURY TRIAL OF TWELVE**<br>: **DEMANDED** |
|         Third-Party Defendant. | : |

## SECOND AMENDED COMPLAINT

1. Plaintiff Millers Capital Insurance Company (hereinafter "Millers Capital") is a business incorporated under the laws of Pennsylvania with its primary place of business located at 805 North Front Street, P.O. Box 1246, Harrisburg, PA 17108-1246, and at all times hereinafter mentioned was authorized to do business in the State of Delaware as an insurance company.

2. Plaintiff's insured, Del-Homes Catalog Group, LLC (hereinafter "Del-Homes") is the owner of a warehouse and distribution facility located at 97 Commerce Way, Dover, Delaware, and at all times herein was insured under plaintiff's policy #609497.

3.  Defendant Lighthouse Construction, Inc. (hereinafter "Lighthouse Construction") is a business incorporated under the laws of Delaware with its primary place of business located at 1201 College Park Drive, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, general contracting and construction.

4.  Defendant Becker Morgan Group, Inc. (hereinafter "Becker Morgan") is a business incorporated under the laws of Maryland, and is the successor to Becker Morgan Moore Olds & Richter, Inc., with a place of business located at 738 S. Governors Avenue, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

5.  Defendant O'Donnell, Naccarato & Macintosh, Inc. (hereinafter "O'Donnell, Naccarato & Macintosh") is a business incorporated under the laws of Delaware with its primary place of business located at 300 Delaware Avenue, Suite 820, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

6.  Defendant East Coast Erectors, Inc. (hereinafter "East Coast Erectors") is a business incorporated under the laws of Delaware with a registered agent located at 1332 King Street, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing, engineering, and constructing buildings.

## JURISDICTION AND VENUE

7.  The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.  The matter in controversy, exclusive of interest and costs, exceeds the sum of

- 2 -

Seventy-Five Thousand ($75,000.00) Dollars.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a).

## FACTS

8.  In or about September 1999, Del-Homes acquired a building that was designed, engineered, supplied and/or erected by Lighthouse Construction located at 97 Commerce Place (hereinafter the "1999 building").

9.  Upon information and belief, East Coast Erectors provided design, engineering, and erection services to Lighthouse Construction in connection with the construction of the 1999 building.

10.  Upon information and belief, Becker Morgan and/or its predecessor Becker Morgan Moore Olds & Richter, Inc. provided design and engineering services to Lighthouse Construction in connection with the construction of the 1999 building.

11.  Upon information and belief, O'Donnell, Naccarato & Macintosh also provided design and engineering services to Lighthouse Construction in connection with the construction of the 1999 building. The 1999 building was erected adjacent to a preexisting building, also acquired by Del-Homes in September 1999, that was erected in or about 1995 (hereinafter the "1995 building").

12.  ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12 Existing Roofs states, "Existing roofs shall be evaluated for increased snow loads caused by additions or alterations.  Owners or agents for owners of an existing lower roof shall be advised of the potential for increased snow loads where a higher roof is constructed within 20 feet."

- 3 -

13. In the course of erecting the 1999 building, defendants failed to properly evaluate the 1995 building for the increased snow load caused by the construction of the 1999 building and the resulting height differential created where the buildings interfaced.

14. In the course of designing and constructing the 1999 building, defendants did not engineer or otherwise account for the additional snow load that would be imposed on the pre-existing 1995 building.

15. The 1999 building was designed and constructed without adequate bracing or other structural support being provided for the pre-existing 1995 building where they interfaced.

16. On or about February 17, 2003, a substantial portion of the roof of the 1995 building collapsed following a foreseeable snowfall which collapse directly resulted from the carelessness, negligence and negligent omissions of defendants, as hereinafter more fully set forth.

17. As a result of the collapse, Del-Homes sustained substantial damage to its 1995 building and incurred business income and extra expense losses.

18. Pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 as a result of the foregoing.

19. As a result of the aforesaid payments, and pursuant to the contract of insurance and by operation of law, plaintiff is subrogated to the rights of its insured against all parties responsible for the occurrence of said damages including, but not limited to, any and all subsequent payments related to the loss suffered.

- 4 -

## COUNT I – Negligence
## Plaintiff v All Defendants

20.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 19 hereof as though fully set forth at length herein.

21.  The roof collapse referred to above and the consequent damages sustained by Del-Homes were caused by the negligence, carelessness and negligent omissions of defendants, their agents, servants and/or employees acting within the course and scope of their employment in:

    a.    failing to properly engineer or design for the increased snow loading imposed on the pre-existing 1995 building as a result of the construction of the 1999 building;

    b.    failing to warn of the need to engineer or design for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

    c.    failing to design or engineer the 1999 building in a manner that did not compromise the structural integrity of the 1995 building;

    d.    failing to properly inspect the 1995 building for adequate structural stability against snow loads that could and did result from construction of the 1999 building immediately adjacent to the 1995 building;

    e.    failing to advise and warn of the necessity to review the design of the 1995 building for the additional loads that could be imposed by the construction of an adjacent higher building;

    f.    failing to advise and warn of the necessity to inspect the 1995 building for conformance with the design drawings of the 1995 building in anticipation of additional loading on the 1995 building from construction of the 1999 building;

    g.    failing to redesign and/or re-engineer the 1995 building to accommodate the additional load imposed by the construction of the 1999 building;

    h.    failing to warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings;

    i.    failing to adequately warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings without engineering or designing for the additional load imposed upon the 1995 building;

    j.    failing to install additional bracing and/or structural reinforcement to counter the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

k.  failing to recognize or perceive the additional load imposed on the 1995 building by the construction of the 1999 building;

l.  failing to provide alternative design and/or engineering for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

m.  failing to address or counteract the additional wind drifted snow load conditions created by the 1999 building's height differential at the point where the buildings interfaced;

n.  failing to properly brace and/or support structural components and/or members of the buildings to support anticipated wind drifted snow load conditions;

o.  failing to perform standard calculations to identify and correct the inherent design defects with interfacing two buildings with significant height differentials;

p.  failing to select competent and skilled workers and subcontractors to design, engineer, supply and erect the buildings in accordance with industry standards and readily identifiable load conditions;

q.  failing to warn of the inherent defects, known defects, and work product deficiencies that compromised the structural integrity of the 1995 building;

r.  failing to perform the design, engineering, supply and construction of the 1999 building in a good and workmanlike manner;

s.  failing to comply with applicable codes and standards including but not limited to ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12; and

t.  otherwise failing to use due care under the circumstances.

22.  As a direct and proximate result of the collapse, Del-Homes sustained substantial damage to its building and incurred business income and extra expense losses.

23.  As a result of the foregoing and pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which defendants are liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendants Lighthouse Construction, Inc., Becker Morgan Group, Inc., O'Donnell, Naccarato & Macintosh, Inc., and East Coast Erectors, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

<u>**COUNT II – Negligent Misrepresentation**</u>
<u>**Plaintiff v O'Donnell, Naccarato & Macintosh**</u>

24.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 23 hereof as though fully set forth at length herein.

25.  Upon information and belief, O'Donnell, Naccarato & Macintosh was specifically retained by Lighthouse Construction and/or East Coast Erectors to engineer the 1999 building.

26.  In the course of providing engineering services, O'Donnell, Naccarato & Macintosh reviewed applicable building codes, designed the 1999 building, and prepared plans and drawings for plan approval and/or building permit issuance by the local and/or state agencies responsible for new construction in Dover, Delaware.

27.  As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to recommend or require necessary modifications and/or additions to the 1995 building to protect against collapse due to excessive snow loads and, as a result, supplied false, inadequate, incomplete and incorrect information to others in their business relations, including Lighthouse Construction and/or East Coast Erectors.

28.  As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to design the building in a manner that did not place the 1995 building at risk of collapse due to snow loading.

- 7 -

29.  O'Donnell, Naccarato & Macintosh was, at all times relevant hereto, an engineering firm and was in the business of supplying structural design information and plans/drawings used by others to construct buildings such as the 1999 building constructed by Lighthouse Construction.

30.  As set forth in Count I and above, O'Donnell, Naccarato & Macintosh failed to exercise reasonable care or competence in obtaining or communicating the engineering information reasonably relied upon before, during and after construction.

31.  O'Donnell, Naccarato & Macintosh was under a public duty to obtain and communicate engineering information that was the result of reasonable care or competence.

32.  The engineering services provide by O'Donnell, Naccarato & Macintosh were intended to benefit a limited group of persons, including Plaintiff, as a subsequent owner of the buildings.

33.  As a direct and proximate result of the collapse caused by the aforementioned negligent misrepresentations of O'Donnell, Naccarato & Macintosh, Del-Homes sustained substantial damage to its building and incurred business income and extra expense losses.

34.  As a result of the foregoing and pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which the defendant is liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendant O'Donnell, Naccarato & Macintosh, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

- 8 -

## COUNT III – Gross Negligence

## Plaintiff v O'Donnell, Naccarato & Macintosh, Lighthouse Construction and East Coast Erectors

35.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 34 hereof as though fully set forth at length herein.

36.     Defendants were responsible for designing and constructing the 1999 building, including the evaluation of the 1995 building in recognition of the fact that a snow drift would be created on the lower level 1995 building.

37.     Defendants were responsible for securing sealed construction documents for the evaluation and modification of the 1995 building from a professional engineer licensed to practice in the State of Delaware and/or the necessary Building Permit from the City of Dover to structurally alter the 1995 building.

38.     Defendants knew, recognized and understood that the 1999 building would create an additional load on the 1995 building in the form of drifted snow and recognized that the 1995 building would be made dangerous by the additional load.

39.     Defendants had actual and/or constructive knowledge of the need to secure a Building Permit and construction documents sealed by an engineer licensed in the State of Delaware in accordance with industry standards and local code requirements.

40.     Despite this knowledge, the defendants exposed the 1995 building and workers within the building to the collapse potential created by the 1999 building having a higher roof without securing a Building Permit and/or sealed construction plans for structural modifications to the 1995 building, including a sealed evaluation.

DOCS_PH 1793251v1

41.     Defendants relied, in part, on the evaluation of the 1995 building by a person who was not a registered engineer in any state and, in fact, failed the licensing exam on three occasions.

42.     The Building Code in effect at the time of the 1999 project, BOCA 1996, specifically required, inter alia, that construction documents for new construction, alteration, repairs, expansion, addition or modification to buildings and structures be prepared by a registered design professional in the State of Delaware.

43.     The BOCA 1996 Building Code, as adopted, also requires, inter alia, that construction shall not lawfully commence without a permit being issued when a structure is altered.

44.     Defendants willfully, carelessly, wantonly, intentionally and/or unlawfully disregarded the ordinary standard of care, industry guidelines and applicable building code in the City of Dover by knowingly creating a drifted snow collapse hazard on the 1995 building without securing the required Building Permit and without securing construction documents sealed by a registered engineer licensed to practice in the State of Delaware.

45      The acts/omissions of Defendants detailed herein and in Count I resulted in an extreme departure from the ordinary standard of care and directly and proximately caused plaintiffs' damages.

46      Defendants, for the reasons stated, are grossly negligent.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendants Lighthouse Construction, Inc., O'Donnell, Naccarato & Macintosh, Inc., and East Coast Erectors, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees, and such other relief as this court deems appropriate.

**WHITE AND WILLIAMS LLP**

BY: _____

Frank E. Noyes, Esquire (#3988)
824 North Market Street, Suite 902
Wilmington, DE 19899
302-467-4511
*Attorney for Plaintiff Millers Capital*
*Insurance Co.*

Of Counsel:
Ron Pingitore, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19135-7395
215-864-6324

- 11 -

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MILLERS CAPITAL INSURANCE COMPANY a/s/o DEL-HOMES CATALOG GROUP, LLC | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., O'DONNELL, NACCARATO & MACINTOSH, INC., and EAST COAST ERECTORS, INC. | : |
| | : |
| Defendants. | : C.A. No. 04-1322-JJF |
| | :(Consolidated) |
| and | : |
| | : |
| LIGHTHOUSE CONSTRUCTION, INC., | : |
| | : **SECOND AMENDED** |
| Defendant and Third-Party Plaintiff, | : **COMPLAINT** |
| | : |
| v. | : |
| | : |
| EAST COAST ERECTORS, INC., | : **JURY TRIAL OF TWELVE** |
| | : **DEMANDED** |
| Third-Party Defendant. | : |

**SECOND AMENDED COMPLAINT**

35.  Plaintiff Millers Capital Insurance Company (hereinafter "Millers Capital") is a business incorporated under the laws of Pennsylvania with its primary place of business located at 805 North Front Street, P.O. Box 1246, Harrisburg, PA 17108-1246, and at all times hereinafter mentioned was authorized to do business in the State of Delaware as an insurance company.

36.  Plaintiff's insured, Del-Homes Catalog Group, LLC (hereinafter "Del-Homes") is the owner of a warehouse and distribution facility located at 97 Commerce Way, Dover, Delaware, and at all times herein was insured under plaintiff's policy #609497.

37.  Defendant Lighthouse Construction, Inc. (hereinafter "Lighthouse Construction") is a business incorporated under the laws of Delaware with its primary place of business located at 1201 College Park Drive, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, general contracting and construction.

38.  Defendant Becker Morgan Group, Inc. (hereinafter "Becker Morgan") is a business incorporated under the laws of Maryland, and is the successor to Becker Morgan Moore Olds & Richter, Inc., with a place of business located at 738 S. Governors Avenue, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

39.  Defendant O'Donnell, Naccarato & Macintosh, Inc. (hereinafter "O'Donnell, Naccarato & Macintosh") is a business incorporated under the laws of Delaware with its primary place of business located at 300 Delaware Avenue, Suite 820, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

40.  Defendant East Coast Erectors, Inc. (hereinafter "East Coast Erectors") is a business incorporated under the laws of Delaware with a registered agent located at 1332 King Street, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing, engineering, and constructing buildings.

- 2 -

## JURISDICTION AND VENUE

41.  The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28

U.S.C. §1332.  The matter in controversy, exclusive of interest and costs, exceeds the sum of

Seventy-Five Thousand ($75,000.00) Dollars.  Venue is proper in this judicial district pursuant to

28 U.S.C. §1391(a).

## FACTS

42.  In or about September 1999, Del-Homes acquired a building that was designed,

engineered, supplied and/or erected by Lighthouse Construction located at 97 Commerce Place

(hereinafter the "1999 building").

43.  Upon information and belief, East Coast Erectors provided design, engineering, and

erection services to Lighthouse Construction in connection with the construction of the 1999

building.

44.  Upon information and belief, Becker Morgan and/or its predecessor Becker Morgan

Moore Olds & Richter, Inc. provided design and engineering services to Lighthouse

Construction in connection with the construction of the 1999 building.

45.  Upon information and belief, O'Donnell, Naccarato & Macintosh also provided design

and engineering services to Lighthouse Construction in connection with the construction of the

1999 building. The 1999 building was erected adjacent to a preexisting building, also acquired

by Del-Homes in September 1999, that was erected in or about 1995 (hereinafter the "1995

building").

46.  ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads

For Buildings and Other Structures, Section 7.12 Existing Roofs states, "Existing roofs shall be

evaluated for increased snow loads caused by additions or alterations.  Owners or agents for

- 3 -

owners of an existing lower roof shall be advised of the potential for increased snow loads where a higher roof is constructed within 20 feet."

47. In the course of erecting the 1999 building, defendants failed to properly evaluate the 1995 building for the increased snow load caused by the construction of the 1999 building and the resulting height differential created where the buildings interfaced.

48. In the course of designing and constructing the 1999 building, defendants did not engineer or otherwise account for the additional snow load that would be imposed on the pre-existing 1995 building.

49. The 1999 building was designed and constructed without adequate bracing or other structural support being provided for the pre-existing 1995 building where they interfaced.

50. On or about February 17, 2003, a substantial portion of the roof of the 1995 building collapsed following a foreseeable snowfall which collapse directly resulted from the carelessness, negligence and negligent omissions of defendants, as hereinafter more fully set forth.

51. As a result of the collapse, Del-Homes sustained substantial damage to its 1995 building and incurred business income and extra expense losses.

52. Pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 as a result of the foregoing.

53. As a result of the aforesaid payments, and pursuant to the contract of insurance and by operation of law, plaintiff is subrogated to the rights of its insured against all parties responsible for the occurrence of said damages including, but not limited to, any and all subsequent payments related to the loss suffered.

- 4 -

### <u>COUNT I – Negligence</u>
### <u>Plaintiff v All Defendants</u>

54.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 19 hereof as though fully set forth at length herein.

55.  The roof collapse referred to above and the consequent damages sustained by Del-Homes were caused by the negligence, carelessness and negligent omissions of defendants, their agents, servants and/or employees acting within the course and scope of their employment in:

a.  failing to properly engineer or design for the increased snow loading imposed on the pre-existing 1995 building as a result of the construction of the 1999 building;

b.  failing to warn of the need to engineer or design for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

c.  failing to design or engineer the 1999 building in a manner that did not compromise the structural integrity of the 1995 building;

d.  failing to properly inspect the 1995 building for adequate structural stability against snow loads that could and did result from construction of the 1999 building immediately adjacent to the 1995 building;

e.  failing to advise and warn of the necessity to review the design of the 1995 building for the additional loads that could be imposed by the construction of an adjacent higher building;

f.  failing to advise and warn of the necessity to inspect the 1995 building for conformance with the design drawings of the 1995 building in anticipation of additional loading on the 1995 building from construction of the 1999 building;

g.  failing to redesign and/or re-engineer the 1995 building to accommodate the additional load imposed by the construction of the 1999 building;

h.  failing to warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings;

i.  failing to adequately warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings without engineering or designing for the additional load imposed upon the 1995 building;

j.  failing to install additional bracing and/or structural reinforcement to counter the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

- 5 -

k.   failing to recognize or perceive the additional load imposed on the 1995 building by the construction of the 1999 building;

l.   failing to provide alternative design and/or engineering for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

m.   failing to address or counteract the additional wind drifted snow load conditions created by the 1999 building's height differential at the point where the buildings interfaced;

n.   failing to properly brace and/or support structural components and/or members of the buildings to support anticipated wind drifted snow load conditions;

o.   failing to perform standard calculations to identify and correct the inherent design defects with interfacing two buildings with significant height differentials;

p.   failing to select competent and skilled workers and subcontractors to design, engineer, supply and erect the buildings in accordance with industry standards and readily identifiable load conditions;

q.   failing to warn of the inherent defects, known defects, and work product deficiencies that compromised the structural integrity of the 1995 building;

r.   failing to perform the design, engineering, supply and construction of the 1999 building in a good and workmanlike manner;

s.   failing to comply with applicable codes and standards including but not limited to ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12; and

t.   otherwise failing to use due care under the circumstances.

56.   As a direct and proximate result of the collapse, Del-Homes sustained substantial

damage to its building and incurred business income and extra expense losses.

57.   As a result of the foregoing and pursuant to the terms and conditions of its contract of

insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which

defendants are liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendants Lighthouse Construction, Inc., Becker Morgan Group, Inc., O'Donnell, Naccarato & Macintosh, Inc., and East Coast Erectors, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

### COUNT II – Negligent Misrepresentation
### Plaintiff v O'Donnell, Naccarato & Macintosh

58.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 23 hereof as though fully set forth at length herein.

59.  Upon information and belief, O'Donnell, Naccarato & Macintosh was specifically retained by Lighthouse Construction and/or East Coast Erectors to engineer the 1999 building.

60.  In the course of providing engineering services, O'Donnell, Naccarato & Macintosh reviewed applicable building codes, designed the 1999 building, and prepared plans and drawings for plan approval and/or building permit issuance by the local and/or state agencies responsible for new construction in Dover, Delaware.

61.  As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to recommend or require necessary modifications and/or additions to the 1995 building to protect against collapse due to excessive snow loads and, as a result, supplied false, inadequate, incomplete and incorrect information to others in their business relations, including Lighthouse Construction and/or East Coast Erectors.

62.  As an engineer for the 1999 building design process, O'Donnell, Naccarato & Macintosh failed to design the building in a manner that did not place the 1995 building at risk of collapse due to snow loading.

- 7 -

63.  O'Donnell, Naccarato & Macintosh was, at all times relevant hereto, an engineering firm and was in the business of supplying structural design information and plans/drawings used by others to construct buildings such as the 1999 building constructed by Lighthouse Construction.

64.  As set forth in Count I and above, O'Donnell, Naccarato & Macintosh failed to exercise reasonable care or competence in obtaining or communicating the engineering information reasonably relied upon before, during and after construction.

65.  O'Donnell, Naccarato & Macintosh was under a public duty to obtain and communicate engineering information that was the result of reasonable care or competence.

66.  The engineering services provide by O'Donnell, Naccarato & Macintosh were intended to benefit a limited group of persons, including Plaintiff, as a subsequent owner of the buildings.

67.  As a direct and proximate result of the collapse caused by the aforementioned negligent misrepresentations of O'Donnell, Naccarato & Macintosh, Del-Homes sustained substantial damage to its building and incurred business income and extra expense losses.

68.  As a result of the foregoing and pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Del-Homes in excess of $6,000,000.00 for which the defendant is liable to plaintiff.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendant O'Donnell, Naccarato & Macintosh, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees and such other relief as this court deems appropriate.

## COUNT III – Gross Negligence

## Plaintiff v O'Donnell, Naccarato & Macintosh, Lighthouse Construction and East Coast Erectors

35.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 34 hereof as though fully set forth at length herein.

36.     Defendants were responsible for designing and constructing the 1999 building, including the evaluation of the 1995 building in recognition of the fact that a snow drift would be created on the lower level 1995 building.

37.     Defendants were responsible for securing sealed construction documents for the evaluation and modification of the 1995 building from a professional engineer licensed to practice in the State of Delaware and/or the necessary Building Permit from the City of Dover to structurally alter the 1995 building.

38.     Defendants knew, recognized and understood that the 1999 building would create an additional load on the 1995 building in the form of drifted snow and recognized that the 1995 building would be made dangerous by the additional load.

39.     Defendants had actual and/or constructive knowledge of the need to secure a Building Permit and construction documents sealed by an engineer licensed in the State of Delaware in accordance with industry standards and local code requirements.

40.     Despite this knowledge, the defendants exposed the 1995 building and workers within the building to the collapse potential created by the 1999 building having a higher roof without securing a Building Permit and/or sealed construction plans for structural modifications to the 1995 building, including a sealed evaluation.

41.     Defendants relied, in part, on the evaluation of the 1995 building by a person who was not a registered engineer in any state and, in fact, failed the licensing exam on three occasions.

42.     The Building Code in effect at the time of the 1999 project, BOCA 1996, specifically required, inter alia, that construction documents for new construction, alteration, repairs, expansion, addition or modification to buildings and structures be prepared by a registered design professional in the State of Delaware.

43.     The BOCA 1996 Building Code, as adopted, also requires, inter alia, that construction shall not lawfully commence without a permit being issued when a structure is altered.

44.     Defendants willfully, carelessly, wantonly, intentionally and/or unlawfully disregarded the ordinary standard of care, industry guidelines and applicable building code in the City of Dover by knowingly creating a drifted snow collapse hazard on the 1995 building without securing the required Building Permit and without securing construction documents sealed by a registered engineer licensed to practice in the State of Delaware.

45      The acts/omissions of Defendants detailed herein and in Count I resulted in an extreme departure from the ordinary standard of care and directly and proximately caused plaintiffs' damages.

46      Defendants, for the reasons stated, are grossly negligent.

**WHEREFORE**, plaintiff demands judgment in its favor and against defendants Lighthouse Construction, Inc., O'Donnell, Naccarato & Macintosh, Inc., and East Coast Erectors, Inc., in an amount in excess of $6,000,000.00 together with costs, pre-judgment interest, attorney fees, and such other relief as this court deems appropriate.

DOCS_PH 1793251v1

**WHITE AND WILLIAMS LLP**

BY: _____

Frank E. Noyes, Esquire (#3988)
824 North Market Street, Suite 902
Wilmington, DE 19899
302-467-4511
*Attorney for Plaintiff Millers Capital*
*Insurance Co.*

Of Counsel:
Ron Pingitore, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19135-7395
215-864-6324

- 11 -