# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY a/s/o Ezibz.com, Inc./Avacet, Inc., EZIBA SECURITIES CORP., <br><br>Plaintiff, <br><br>v. <br><br>LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., and O'DONNELL, NACCARATO & MACINTOSH, INC., <br>Defendants. <br><br>and <br><br>LIGHTHOUSE CONSTRUCTION, INC., <br><br>Defendant and Third-Party Plaintiff, <br>v. <br>EAST COAST ERECTORS, INC., <br><br>Third-Party Defendant. | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: C.A. No. 04-339/04-1322-JJF <br>: (Consolidated) <br>: <br>: <br>: <br>: <br>: <br>: <br>: **JURY TRIAL OF TWELVE** <br>: **DEMANDED** <br>: <br>: <br>: <br>: <br>: <br>: <br>: |

## REVISED AMENDED COMPLAINT

### PARTIES

1. Plaintiff herein, Federal Insurance Company (hereinafter "Federal"), is a corporation duly organized and existing under the laws of the State of Indiana, with a principal place of business located at 15 Mountain View Road, Warren, New Jersey, and at all times hereinafter mentioned was authorized to do business in the State of Delaware as an insurance company.

2. Defendant herein, Lighthouse Construction, Inc. (hereinafter "Lighthouse Construction"), is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business located at 1201 College Park Drive, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, general contracting and construction.

3. Defendant herein, Becker Morgan Group, Inc. (hereinafter "Becker Morgan"), is a corporation duly organized and existing under the laws of the State of Maryland, and the successor to Becker Morgan Moore Olds & Richter, Inc., with a place of business located at 738 S. Governors Avenue, Dover, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

4. Defendant herein, O'Donnell, Naccarato & Macintosh, Inc. (hereinafter "O'Donnell, Naccarato & Macintosh"), is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business located at 300 Delaware Avenue, Suite 820, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing and engineering buildings.

5. Third-Party Defendant herein, East Coast Erectors, Inc. (hereinafter "East Coast Erectors") is a business incorporated under the laws of Delaware with a registered agent located at 1332 King Street, Wilmington, Delaware, and at all times hereinafter mentioned was engaged in the business of, inter alia, designing, engineering, and constructing buildings.

**JURISDICTION AND VENUE**

6. The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332. The matter in controversy, exclusive of interest and costs, exceeds

the sum of Seventy-Five Thousand ($75,000.00) Dollars. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a).

## FACTS

7. At all times material hereto, plaintiff Federal provided insurance coverage to Eziba.Com, Inc./Avacet, Inc., Eziba Securities Corp. (hereinafter "Eziba") with respect to business personal property and business income/extra expenses in connection with Ezibas' operation of its online retail handcrafted jewelry, art and artifacts, home furnishings and gift items business.

8. On and prior to February 17, 2003, Eziba contracted with Client Logic to provide fulfillment and distribution services including picking, packing and shipping services in connection with Ezibas' business.

9. On and prior to February 17, 2003, Client Logic was a tenant at 97 Commerce Way, Dover, Delaware, a warehouse and distribution facility.

10. As of February 17, 2003, Eziba had warehoused at 97 Commerce Way, Dover, Delaware, business personal property in the form of stock with a total value of $1,744,471.00 including pick, bulk and jewelry items.

11. In or about 1999, Del-Homes Catalog Group, LLC, owner of the warehouse and distribution facility located at 97 Commerce Way, Dover, Delaware, contracted with Lighthouse Construction to design, engineer, supply and erect a building (hereinafter the "1999 building").

12. Del-Homes Catalog Group, LLC and/or Lighthouse Construction in turn contracted with Becker Morgan and/or its predecessor Becker Morgan Moore Olds & Richter,

Inc. to provide design and engineering services in connection with the construction of the 1999 building.

13. Del-Homes Catalog Group, LLC and/or Lighthouse Construction contracted with O'Donnell, Naccarato & Macintosh to provide design and engineering services in connection with the construction of the 1999 building.

14. Upon information and belief, East Coast Erectors provided design, engineering and erection services to Lighthouse Construction in connection with the construction of the 1999 building.

15. The 1999 building was erected immediately adjacent to and joined a pre-existing building that was erected in 1995 (hereinafter the "1995 building").

16. The 1999 building abutted the 1995 building for approximately 200 feet along the eastern perimeter wall of the 1995 building.

17. As constructed, the 1999 building's roofline was approximately four feet higher than the 1995 building roofline, where the two buildings interfaced.

18. In the process of designing and engineering the 1999 building, the defendants knew or should have known an additional snow load would be imposed upon the 1995 building.

19. ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12 Existing Roofs states, "Existing roofs shall be evaluated for increased snow loads caused by additions or alterations. Owners or agents for owners of an existing lower roof shall be advised of the potential for increased snow loads where a higher roof is constructed within 20 feet."

20. In the course of erecting the 1999 building, defendants failed to evaluate the 1995 building for the increased snow load caused by the construction of the 1999 building and the resulting height differential created where the buildings interfaced.

21. In the course of designing and constructing the 1999 building, defendants did not engineer or otherwise account for the additional snow load imposed on the pre-existing 1995 building.

22. In the course of designing and constructing the 1999 building, defendants failed to properly inspect the existing 1995 building, which inspection would have revealed certain obvious defects including the lack of lateral bracing of the bottom flanges of the main frame girders at the column lines in the 1995 building.

23. Lateral bracing of the bottom flange of the main frame girders at the column lines in the 1995 building was shown on the original drawings for the 1995 building but were omitted during or subsequent to construction of the 1995 building.

24. The lack of lateral bracing of the bottom flange of the main frame girders at the column lines in the 1995 building was visible from the floor of the 1995 building to the casual observer.

25. Defendants should have recognized the lack of lateral bracing of the bottom flange of the main frame girders at the column lines as constituting a significant deficiency to the structural stability of the 1995 building.

26. The 1999 building was designed and constructed without any additional bracing or other structural support being provided for the pre-existing 1995 building where the 1999 building interfaced with the 1995 building.

27. On or about February 17, 2003, a substantial portion of the roof of the 1995 building was caused to collapse following a foreseeable snowfall which collapse directly resulted from the carelessness, negligence and negligent omissions of defendants, as is hereinafter more fully set forth.

28. As a result of the collapse, Eziba sustained substantial damage to its business personal property comprised of its inventory and sustained business income and extra expense losses.

29. Pursuant to the terms and conditions of its contract of insurance, plaintiff has made payments to Eziba in the amount of $1,055,090.00 less a salvage recovery of $63,010.00 as a result of the foregoing.

30. As a result of the aforesaid payments, and pursuant to the contract of insurance and by operation of law, plaintiff is subrogated to the rights of its insured against all parties responsible for the occurrence of said damages.

## COUNT I

31. Plaintiff incorporates by reference the allegations of paragraphs 1 through 30 hereof as though fully set forth at length herein.

32. The roof collapse referred to in paragraph 27 hereof and the consequent damages sustained by plaintiff were caused by the negligence, carelessness and negligent omissions of defendants, their agents, servants and/or employees acting within the course and scope of their employment in:

    (a) failing to properly engineer or design for the increased snow loading imposed on the pre-existing 1995 building as a result of the construction of the 1999 building;

(b) failing to warn of the need to engineer or design for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

(c) failing to design or engineer the 1999 building in a manner that did not compromise the structural integrity of the 1995 building;

(d) failing to properly inspect the 1995 building for adequate structural stability against snow loads that could and did result from construction of the 1999 building immediately adjacent to the 1995 building;

(e) failing to properly or adequately review the design of the 1995 building, and compare said design to the "as-built" condition of the 1995 building in anticipation of additional loading that could be imposed on the 1995 building by construction of the 1999 building;

(f) failing to recognize the structural deficiency of inadequate lateral bracing of the bottom flanges of the main frame girders at the column lines in the 1995 building in anticipation of additional loading that could be imposed on the 1995 building by construction of the 1999 building;

(g) failing to advise and warn of the necessity to review the design of the 1995 building for the additional loads that could be imposed on the 1995 building by the construction of an adjacent higher building;

(h) failing to advise and warn of the necessity to inspect the 1995 building for conformance with the design drawings of the 1995 building in anticipation of additional loading that could be imposed on the 1995 building by construction of the 1999 building;

(i) failing to observe the lack of lateral bracing at the bottom flanges of the main frame girders of the column lines of the 1995 building which bracing was required by the design of the 1995 building in anticipation of additional loading that could be imposed on the 1995 building by construction of the 1999 building;

(j) failing to redesign and/or re-engineer the 1995 building to accommodate the additional load imposed by the construction of the 1999 building;

(k) failing to warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings;

(l) failing to adequately warn of the inherent deficiencies with interfacing the 1999 and 1995 buildings without engineering or designing for the additional load imposed upon the 1995 building;

(m) failing to install additional bracing and/or structural reinforcement to account for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

(n) failing to recognize or perceive the additional load imposed on the 1995 building by the construction of the 1999 building;

(o) failing to provide alternative design and/or engineering for the additional load imposed on the 1995 building as a result of the construction of the 1999 building;

(p) failing to address or counteract the additional wind drifted snow load conditions created by the 1999 building's height differential at the point where the buildings interfaced;

(q) failing to properly brace and/or support structural components and/or members of the buildings to support anticipated wind drifted snow load conditions;

(r) failing to perform standard calculations to identify and correct the inherent design defects with interfacing two buildings with significant height differentials;

(s) failing to select competent and skilled workers and subcontractors to design, engineer, supply and erect the buildings in accordance with industry standards and readily identifiable load conditions;

(t) failing to warn of the inherent defects, known defects, and work product deficiencies that compromised the structural integrity of the 1995 building;

(u) failing to perform the design, engineering, supply and construction of the 1999 building in a good and workmanlike manner;

(v) failing to comply with applicable codes and standards including but not limited to ANSI/ASCE 7-98, the American Society of Civil Engineers, Minimum Design Loads For Buildings and Other Structures, Section 7.12; and

(w) otherwise failing to use due care under the circumstances.

33. As a direct and proximate result of the foregoing, plaintiff sustained damages as aforesaid, for which defendant is liable to the plaintiff.

WHEREFORE, plaintiff demands judgment against defendants in the amount of $991,080.00 together with interest and the costs of this action.

## COUNT II – GROSS NEGLIGENCE
## PLAINTIFF v. DEFENDANTS, LIGHTHOUSE CONSTRUCTION, INC. AND O'DONNELL, NACCARATO & MACINTOSH, INC.

34. Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 hereof as though fully set forth at length herein.

35. Defendants were responsible for designing and constructing the 1999 building, including the evaluation of the 1995 building in recognition of the fact that a snow drift would be created on the lower level 1995 building.

36. Defendants were responsible for securing sealed construction documents for the evaluation and modification of the 1995 building from a professional engineer licensed to practice in the State of Delaware and/or the necessary Building Permit from the City of Dover to structurally alter the 1995 building.

37. Defendants knew, recognized and understood that the 1999 building would create an additional load on the 1995 building in the form of drifted snow and recognized that the 1995 building would be made dangerous by the additional load.

38. Defendants had actual and/or constructive knowledge of the need to secure a Building Permit and construction documents sealed by an engineer licensed in the State of Delaware in accordance with industry standards and local code requirements.

9

39. Despite this knowledge, the defendants exposed the 1995 building and workers within the building to the collapse potential created by the 1999 building having a higher roof without securing a Building Permit and/or sealed construction plans for structural modifications to the 1995 building, including a sealed evaluation.

40. Defendants relied, in part, on the evaluation of the 1995 building by a person who was not a registered engineer in any state and, in fact, failed the licensing exam on three occasions.

41. The Building Code in effect at the time of the 1999 project, BOCA 1996, specifically required, inter alia, that construction documents for new construction, alteration, repairs, expansion, addition or modification to buildings and structures be prepared by a registered design professional in the State of Delaware.

42. The BOCA 1996 Building Code, as adopted, also requires, inter alia, that construction shall not lawfully commence without a permit being issued when a structure is altered.

43. Defendants willfully, carelessly, wantonly, intentionally and/or unlawfully disregarded the ordinary standard of care, industry guidelines and applicable building code in the City of Dover by knowingly creating a drifted snow collapse hazard on the 1995 building without securing the required Building Permit and without securing construction documents sealed by a registered engineer licensed to practice in the State of Delaware.

44. The acts/omissions of Defendants detailed herein and in Count I resulted in an extreme departure from the ordinary standard of care and directly and proximately caused plaintiff's damages.

45. Defendants, for the reasons stated, are grossly negligent.

WHEREFORE, plaintiff demands judgment against defendants in the amount of $991,080.00 together with interest and the costs of this action.

Dated: October 19, 2005

                          COZEN O'CONNOR


                          BY:_____
                              SEAN J. BELLEW, ESQUIRE (#4072)
                              Chase Manhattan Centre
                              1201 North Market Street
                              Suite 1400
                              Wilmington, DE  19801
                              (302) 295-2000

OF COUNSEL:
STEVEN K. GERBER, ESQUIRE
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
(215) 665-2088

                          ATTORNEYS FOR PLAINTIFF