IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY a/s/o EZIBA.COM, INC./AVACET, INC., EBIZA SECURITIES CORP. and MILLERS CAPITAL INSURANCE COMPANY a/s/o DEL-HOMES CATALOG GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., and O'DONNELL, NACCARATO & MACINTOSH, INC. and EAST COAST ERECTORS, INC.<br><br>Defendants,<br><br>and<br><br>LIGHTHOUSE CONSTRUCTION, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>EAST COAST ERECTORS, INC.,<br><br>Third-Party Defendant. | Civil Action No. 04-339/04-1322 JJF<br><br>CONSOLIDATED ACTION<br><br>JURY OF TWELVE DEMANDED |

**OPENING BRIEF IN SUPPORT OF DEFENDANT AND THIRD-PARTY DEFENDANT EAST COAST ERECTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT AND THIRD-PARTY PLAINTIFF LIGHTHOUSE CONSTRUCTION, INC.**

COMES NOW Defendant and Third-Party Defendant East Coast Erectors, Inc. ("ECE") and files this Opening Brief in Support of its Motion for Partial Summary Judgment respectfully showing the Court as follows:

| | |
|---|---|
| **McLAIN & MERRITT, P.C.** | **WETZEL & ASSOCIATES, P.A.** |
| Robert B. Hill, Pro Hac Vice | Benjamin C. Wetzel, III (I.D. No. 985) |
| 3445 Peachtree Road, NE | Natalie M. Ippolito (I.D. No. 3845) |
| Suite 500 | The Carriage House, Suite 201 |
| Atlanta, GA 30326 | 1100 N. Grant Avenue |
| (404) 266-9171 | Wilmington, DE 19805 |
| | (302) 652-1200 |

*Attorneys for Defendant and Third-Party Defendant East Coast Erectors, Inc.*

Dated: October 21, 2005

**TABLE OF CONTENTS**

                                                                                    **Page**

TABLE OF AUTHORITIES………………………………………………………… ii

NATURE AND STAGE OF THE PROCEEDINGS …………………………….... 1

SUMMARY OF ARGUMENT ……………………………………………………. 2

STATEMENT OF FACTS…………………………………………………………. 3

ARGUMENT………………………………………………………………………. 7

CONCLUSION……………………………………………………………………. 11

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................. 7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................ 7

Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300 (3d Cir. 1995) ...................... 7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ........................... 7

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231 (3d Cir. 1995) .................................................. 7

**STATE CASES**

Friel v. Jones, 206 A.2d 232, 233 (Del. Ch. 1964), *aff'd,* 212 A.2d 609 (Del. 1965) ............... 8

**UNREPORTED DECISIONS**

Federal Ins. Co. v. Lighthouse Constr., Inc., 2005 U.S. Dist. LEXIS 18503 ......................... 9

**STATUTES AND RULES**

Fed. R. Civ. P. 56(c) ............................................................................................. 7

6 *Del. C.* § 2714 .................................................................................................. 9

**NATURE AND STAGE OF THE PROCEEDINGS**

On October 1, 2004, plaintiff Millers Capital Insurance Company a/s/o Del Homes Catalog Group, LLC ("Millers Capital") filed a complaint alleging negligence against defendants Lighthouse Construction, Inc. ("Lighthouse"), Becker Morgan Group, Inc. ("BMG") and O'Donnell, Naccarato & MacIntosh, Inc. ("ONM"). (D.I. 1)  On November 19, 2004, Lighthouse filed an answer and third-party complaint against East Coast Erectors, Inc. ("ECE") for common law and contractual indemnification. (D.I. 5)  On December 10, 2004, Millers Capital v. Lighthouse was consolidated with Federal Insurance v. Lighthouse. (D.I. 37)  ECE answered the third-party complaint on December 21, 2004 (D.I. 38)  On April 29, 2005, Lighthouse filed a motion for leave to file a third-party complaint against ECE in Federal Insurance v. Lighthouse (D.I. 101)  ECE opposed Lighthouse's motion in part, on the grounds that ECE was not contractually required to indemnify Lighthouse. (D.I. 107)  On August 30, 2005, the Court issued a Memorandum Opinion (D.I. 139) and Order (D.I. 140) permitting Lighthouse to file a third-party complaint against ECE, including a claim for contractual indemnification. ECE answered the third-party complaint on September 23, 2005. (D.I. 154)

All discovery regarding whether ECE is contractually required to indemnify Lighthouse has been completed. This is ECE's opening brief in support of its motion for partial summary judgment on the issue of contractual indemnification.

1

**SUMMARY OF ARGUMENT**

Partial summary judgment must be granted in ECE's favor because ECE is not contractually required to indemnify Lighthouse. ECE entered into a contract with Lighthouse in 1999 for the erection of a 250,000 square foot building at the Enterprise Business Park in Dover, Delaware (the "1999 Building"); however, that contract did not provide an indemnity. The issue of contractual indemnity was never discussed or negotiated between Lighthouse and ECE. Contractual indemnity is also precluded by the statute of frauds because no signed writing exists. Consequently, there being no genuine material issue of fact, ECE's motion for partial summary judgment must be granted.

**STATEMENT OF FACTS**

On February 8, 1999, Lighthouse distributed a scope of work for structural steel, joist, decking and siding for the Catalog Resources Building Expansion in the Enterprise Business Park in Dover, Delaware (the "Project"). (Exhibit A; Appendix A-1 to A-2) The scope of work provided a description of the 1999 Building, which was to be erected adjacent to an existing building built in 1995 (the "1995 Building") and the work to be included, and stated, "Quotes are due back on 2/23/99 with an award by 2/26/99." On February 23, 1999, ECE submitted a written proposal for the structural steel (the "February 23, 1999 letter"). (Exhibit B; Appendix A-3 to A-5) The proposal provided ECE's price to design, supply and install the structural steel for the 1999 Building, in accordance with the February 8, 1999 bid specifications. It included a main bid and four options. On February 26, 1999, Lighthouse sent ECE a letter accepting ECE's entire proposal (the "February 26, 1999 letter"). (Exhibit C; Appendix A-6) Robert MacLeish, Lighthouse's President, knows of no signed agreement between Lighthouse and ECE other than these two letters. (Exhibit D, MacLeish dep. p. 354; Appendix A-7 to A-11) Mr. MacLeish acknowledged that ECE's proposal was accepted by Lighthouse. (Exhibit D, MacLeish dep. pp. 331-32; Appendix A-7 to A-11) Neither ECE's proposal nor Lighthouse's letter accepting the proposal provided an indemnity. Promptly after Lighthouse's acceptance of ECE's proposal, ECE commenced its work on the 1999 Building. On March 22, 1999, ECE submitted its first payment application to Lighthouse for $36,000.00. (Exhibit E; Appendix A-12 to A-14) The payment application identifies the contract date as 2/26/99.

On April 19, 1999, nearly two months after ECE commenced its work on the 1999 Building, it received a letter dated April 6, 1999 (Exhibit F; Appendix A-15; Exhibit G, Williams dep. p. 203; Appendix A-16 to A-31) from Michael McKone at Lighthouse enclosing an AIA

3

Standard Form Agreement dated March 15, 1999, proposed by Lighthouse as a contract between Lighthouse and ECE (the "Agreement"). (Exhibit H; Appendix A-32 to A-43) According to Mr. McKone's letter, ECE was to review and sign the Agreement. ECE intentionally did not sign the Agreement. (Exhibit G, Williams dep. p.206; Appendix A-28)

The Agreement contained an indemnification provision requiring ECE to indemnify Lighthouse, which provided:

> 4.6.1  To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable…to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or otherwise reduce other rights or obligations or indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

Lighthouse never followed up with ECE or asked ECE to return an executed copy of the Agreement. The Agreement was never signed. (Exhibit I, McKone dep. p.100; Appendix A-44 to A-49 Exhibit D, MacLeish dep. p. 354; Appendix A-11)

In its third-party complaints, Lighthouse alleged that ECE was contractually required to indemnify Lighthouse "under the terms of the written contract executed on March 15, 1999 between East Coast Erectors and Third-Party Plaintiff requiring indemnification of Third-Party Plaintiff for any claim arising out of or resulting from performance of the subcontractor's work or the negligence of the subcontractors on the project." ECE denied this allegation.

During discovery, representatives of both Lighthouse and ECE testified regarding their recollection of the Agreement. Mr. MacLeish, Lighthouse's President and Mr. McKone, Lighthouse's project manager for the Project both agreed that the Agreement was never signed by ECE. (Exhibit I, McKone dep. pp.12-13, 100; Appendix A-46-47, 49; Exhibit D, MacLeish dep. p. 354; Appendix A-11) Mr. McKone did not recall having any discussion with anyone at ECE about executing a formal subcontract for the project. (Exhibit I, McKone dep. p. 72; Appendix A-48) The terms of the Agreement were never negotiated between Lighthouse and ECE. (Exhibit G, Williams dep. p. 204; Appendix A-26)

Michael Williams, ECE's President, testified as follows regarding the contract between ECE and Lighthouse.

> Q: Did you understand, when you received the April 6th letter enclosing the Standard Form Agreement, that that was the contract that East Coast was receiving from Lighthouse?
> A: I did not.
> Q: What did you understand it to be?
> A: My understanding was my proposal and this [February 26, 1999; Exhibit C] letter to precede was my contract. I left a space for Lighthouse to sign. And on the 26th I received this letter, and we went to work. And I didn't see this [April 6, 1999 letter; Exhibit F] show up for approximately two months. So as far as I was concerned, I had proceeded for two months based on this [February 23, 1999 letter; Exhibit B] and this [February 26, 1999 letter; Exhibit C], and that was my contract.
> Q: Okay. What did you understand the purpose of forwarding to you and requesting your signature and return of the Standard Form Agreement to mean?
> A: Well, as I say, this is dated the 6th, but it came the 19th, almost two months after we had began [sic] construction. As a matter of fact, we were imminently going to start erecting the building. And I just – I'm not going to say I disregarded it, but they didn't ask me for the signature, and I didn't provide it, and I didn't think the document was important because I was working from these two.
>                         * * *
> THE WITNESS: Your question was did I continue to perform after I received [the Standard Form Agreement]?
> MR. BAUMBERGER: Yes.
> THE WITNESS: Yes.

5

      BY MR. BAUMBERGER:
        Q:    You didn't raise any objections to this in writing?
        A:    No. I'd like to note that I also performed prior to getting it as well.

(Exhibit G, Williams dep. pp. 205-206, 211; Appendix A-27-28, 29)

      The only signed documents between ECE and Lighthouse evidencing their contract are the February 23, 1999 letter and the February 26, 1999 letter; neither of these documents provides an indemnity.

6

**ARGUMENT**

I.  **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of proving that no genuine issue of material fact exists. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7

## II.   ECE IS NOT CONTRACTUALLY REQUIRED TO INDEMNIFY LIGHTHOUSE.

### A.   The Contract Between Lighthouse and ECE Does Not Contain An Indemnification Provision.

A contract is formed where there is an offer, an acceptance, and consideration. The acceptance of a contract must mirror the offer. Friel v. Jones, 206 A.2d 232, 233 (Del. Ch. 1964), aff'd, 212 A.2d 609 (Del. 1965).

There is no basis for the Court to find that ECE is contractually required to indemnify Lighthouse. ECE and Lighthouse entered into a contract for the Project, which was comprised of two written documents: the February 23, 1999 letter, signed by Michael Williams, and the February 26, 1999 letter, signed by Michael McKone. The February 23, 1999 letter proposed a main bid for the structural steel and also included four options. The February 26, 1999 letter accepted the main bid and all four options. Lighthouse's acceptance mirrored ECE's offer and a contract was formed. Neither the offer nor the acceptance provided an indemnity.

Mr. Williams' testimony that the contract between ECE and Lighthouse was comprised of the February 23, 1999 and February 26, 1999 letters is supported by the fact that the first payment application, which was submitted by ECE on March 22, 1999, nearly one month <u>before</u> ECE received the Agreement, identifies the contract date as February 26, 1999, which was the date Lighthouse accepted ECE's proposal. Furthermore, the fact that the payment application was submitted prior to ECE's receipt of the Agreement demonstrates that the payment application was sent in accordance with industry practice, and not according to whatever terms were in the Agreement. ECE clearly intended for its February 23, 1999 proposal to be the contract between it and Lighthouse, because it left a space for Lighthouse to sign. The February 26, 1999 letter does state that Lighthouse would send ECE a contract; however, that only

8

demonstrates that Lighthouse intended to formalize the contract between it and ECE. Indemnity was never mentioned. ECE cannot be required to contractually indemnify Lighthouse based solely on a document containing an indemnification provision that was sent to ECE nearly two months after it began work on this project, and that was never negotiated or signed by ECE.

No genuine material issue of fact exists regarding whether ECE was contractually required to indemnify Lighthouse; consequently, as a matter of law, summary judgment must be granted in ECE's favor on the issue of contractual indemnity.

### B.   Lighthouse's Claim For Contractual Indemnification Is Barred By The Statute of Frauds.

A writing signed by ECE agreeing to indemnify Lighthouse is required to satisfy the statute of frauds, 6 *Del. C.* § 2714(a), which provides, in part:

> No action shall be brought to charge any person upon any agreement made…or to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith….

ECE cannot be required to contractually indemnify Lighthouse because no such signed writing exists. The partial performance exception cannot satisfy the statute of frauds in this case because ECE was performing pursuant to a contract at all times.

In its August 30, 2005 Memorandum Opinion, the Court permitted Lighthouse to include a claim for contractual indemnification against ECE in its third-party complaint. In support of its decision, the Court stated that, "there are cases and legal sources suggesting that a contract need not be signed to be enforceable, if the parties have manifested an intent to form a contract or if partial performance has occurred under the unsigned contract." Federal Ins. Co. v. Lighthouse Constr., Inc., 2005 U.S. Dist. LEXIS 18503, *4-5 (citations omitted). The cases cited by the

9

Court are not applicable here. ECE commenced working under a signed contract, comprised of the February 23, 1999 letter and the February 26, 1999 letter. ECE's performance occurred <u>after</u> it had a contract, of which indemnity was not a term. ECE never signed the Agreement, and Lighthouse never requested ECE's signature beyond the April 6, 1999 letter enclosing the Agreement.

No signed writing evidencing a contractual obligation for ECE to indemnify Lighthouse exists; consequently, Lighthouse's claim for contractual indemnity is barred by the statute of frauds and must be denied.

## CONCLUSION

The contract between ECE and Lighthouse does not require indemnity, and no signed writing evidencing ECE's alleged obligation to contractually indemnify Lighthouse exists. ECE is not contractually required to indemnify Lighthouse. Therefore, for the reasons set forth herein, ECE's motion for partial summary judgment on the issue of contractual indemnification must be granted.

        Respectfully submitted,

        WETZEL & ASSOCIATES, P.A.

        /s/ Natalie M. Ippolito
        Benjamin C. Wetzel, III (I.D. No. 985)
        Natalie M. Ippolito (I.D. No. 3845)
        The Carriage House, Suite 201
        1100 N. Grant Avenue
        Wilmington, DE 19805
        (302) 652-1200
        nippolito@wetzellaw.com

        Robert B. Hill, Admitted Pro Hac Vice
        MCLAIN & MERRITT, P.C.
        3445 Peachtree Road N.E., Suite 500
        Atlanta, GA 30326

        *Attorneys for Defendant and Third-Party*
        *Defendant East Coast Erectors, Inc.*

Dated: October 21, 2005

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 21, 2005, I electronically filed the within **Defendant/Third-Party Defendant East Coast Erectors, Inc.'s Opening Brief and Appendix in Support of its Motion for Partial Summary Judgment** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| David L. Baumberger, Esquire<br>Chrissinger & Baumberger<br>Three Mill Road, Suite 301<br>Wilmington, DE 19806 | Frank E. Noyes, II, Esquire<br>White & Williams, LLP<br>PO Box 709<br>Wilmington, DE 19899-0709 |
| James F. Bailey, Jr., Esquire<br>Bailey & Associates<br>Three Mill Road, Suite 306A<br>Wilmington, DE 19806 | Sean J. Bellew, Esquire<br>Cozen O'Connor<br>Chase Manhattan Centre<br>1201 N. Market Street, Suite 1400<br>Wilmington, DE 19801 |
| Robert K. Beste, Jr., Esquire<br>Cohen, Seglias, Pallas, Greenhall & Furman, PC<br>Nemours Building<br>1007 Orange Street, Suite 205<br>Wilmington, DE 19801 | Victoria K. Petrone, Esquire<br>Tighe, Cottrell & Logan, PA<br>PO Box 1031<br>Wilmington, DE 19899 |

    I hereby certify that on October 21, 2005, I mailed by United States Postal Service, the document to the following non-registered participants:

| | |
|---|---|
| Ron L. Pingitore, Esquire<br>White and Williams, LLP<br>1800 One Liberty Place<br>Philadelphia, PA 19103-7395 | Steven K. Gerber, Esquire<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103 |
| Bruce W. McCullough, Esquire<br>McCullough & McKenty<br>1225 N. King Street, Suite 1100<br>P.O. Box 397<br>Wilmington, DE 19899-0397 | Geoffrey W. Veith, Esquire<br>Rogut McCarthy Troy, LLC<br>One First Avenue – Suite 410<br>Conshohocken, PA 19428 |
| Dana Ostrovsky, Esquire<br>Cohen, Seglias, Pallas, Greenhall & Furman, P.C.<br>11th Floor, 1515 Market Street<br>Philadelphia, PA 19102 | |

                                                                  WETZEL & ASSOCIATES, P.A.

                                                                 /s/ Natalie M. Ippolito
                                                                 Natalie M. Ippolito (I.D. No. 3845)
                                                                 The Carriage House, Suite 201
                                                                 1100 N. Grant Avenue
                                                                 Wilmington, DE 19805
                                                                 (302) 652-1200
                                                                 nippolito@wetzellaw.com