## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY | : | CIVIL ACTION |
| a/s/o EZIBA.COM, INC./AVACET, INC., | : | NO. 04-339 |
| EZIBA SECURITIES CORP. | : | |
|     Plaintiff, | : | |
|   v. | : | |
| | : | |
| LIGHTHOUSE CONSTRUCTION, INC., | : | JURY TRIAL DEMANDED |
| BECKER MORGAN GROUP, INC., and | : | |
| O'DONNELL, NACCARATO & | : | |
| MACINTOSH, INC., | : | |
|     Defendants. | : | |
| and | : | |
| | : | |
| LIGHTHOUSE CONSTRUCTION, INC., | : | |
|     Defendant and Third-Party | : | |
|     Plaintiff, | : | |
|   v. | : | |
| | : | |
| EAST COAST ERECTORS, INC., | : | |
|     Third-Party Defendant. | : | |

| | | |
|---|---|---|
| MILLERS CAPITAL INSURANCE COMPANY: | | |
| a/s/o DEL-HOMES CATALOG GROUP, LLC, | : | CIVIL ACTION |
| | : | NO. 04-1322-JJF |
|     Plaintiff, | : | |
|   v. | : | |
| | : | |
| LIGHTHOUSE CONSTRUCTION, INC., | : | |
| BECKER MORGAN GROUP, INC., and | : | |
| O'DONNELL, NACCARATO & MACINTOSH, | : | |
| INC., | : | |
|     Defendants. | : | |
| and | : | |
| | : | JURY TRIAL DEMANDED |
| LIGHTHOUSE CONSTRUCTION, INC., | : | |
|     Defendant and Third-Party | : | |
|     Plaintiff, | : | |
|   v. | : | |
| | : | |
| EAST COAST ERECTORS, INC., | : | |
|     Third-Party Defendant. | : | |

**DEFENDANT/THIRD PARTY PLAINTIFF LIGHTHOUSE CONSTRUCTION, INC.'S ANSWERING BRIEF IN SUPPORT OF ITS OPPOSITION TO EAST COAST ERECTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT <u>AGAINST LIGHTHOUSE CONSTRUCTION, INC.</u>**

COMES NOW Defendant and Third-Party Plaintiff Lighthouse Construction, Inc. ("Lighthouse") and files this Answer Brief in Support of its Opposition to East Coast Erectors, Inc.'s ("ECE") Motion for Partial Summary Judgment against Lighthouse Construction, Inc. respectfully showing the Court as follows:

**CHRISSINGER & BAUMBERGER**
David L. Baumberger, Esquire
Three Mill Road, Suite 301
Wilmington, DE 19806
(302) 777-0100
Attorney for Defendant/Third-Party Plaintiff Lighthouse Construction, Inc.

Dated: November 4, 2005

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..iv

NATURE AND STAGE OF THE PROCEEDINGS ………………………………………………1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT ……………………………………..2

COUNTER STATEMENT OF FACTS …………………………………………………………….4

ARGUMENT …………………………………………………………….......................................5

    I.     LIGHTHOUSE'S LETTER OF INTENT CANNOT REPRESENT
         THE CONTRACT BETWEEN THE PARTIES ……………………………………………5

    II.    THE CONTRACT BETWEEN LIGHTHOUSE AND ECE WAS THE
         STANDARD FORM AIA A401 AND IS BINDING …………………………….6

         A.    The Statute of Frauds is Inapplicable ……………………………………..........6

         B.    The Conduct of the Parties Demonstrates the Existence of a Contract ……..7

CONCLUSION…………………………………………………………………………………10

# TABLE OF AUTHORITIES

**Cases**

Duchatkiewicz v. Golumbuski, 111 A. 430 (Del. Ch. 1920) ................................................................ 6

Federal Ins. Co. v. Lighthouse Construction, Inc., 2005 U.S. Dist. LEXIS 18503, *4-5 (2005) ......... 7

Haveg Corporation v. Guyer, 211 A. 2d 910 (Del. 1965) .................................................................. 6

Kerschling v. Lake Forest School District, 687 F. Supp. 927 (D. Del. 1988) .................................... 9

Pantzer v. Shields Development Co., 660 F. Supp. 56 (D. Del. 1986) .............................................. 5

Quillen v. Sayers, 482 A.2d 744, 747 (Del. 1984) ............................................................................. 7

Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (U.S. App. 1996) .......................... 8

Sussex Equipment Co. v. Burke Equipment Co., 860 A.2d 812 (Del. 2004) ..................................... 5

**Statutes**

6 Del. C. § 2714(a) ............................................................................................................................. 5

## **NATURE AND STAGE OF THE PROCEEDINGS**

Lighthouse agrees with the statement offered by ECE for purposes of this Motion.

## ISSUES PRESENTED AND SUMMARY OF ARGUMENT

ECE has neither demonstrated an entitlement to judgment as a matter of law, nor the absence of a genuine issue of material fact. The premise of ECE's Motion is that Delaware's statute of frauds prevents the enforcement of the unsigned agreement containing the indemnity provision. Delaware courts, however, limit the application of the statute to only those contracts which can not possibly be performed within the space of a year. The scope of work specified in the ECE/Lighthouse subcontract was performed in less than a year, rendering Delaware's statute of frauds inapplicable as a matter of law.

Assuming arguendo that the statute of frauds might apply, there remains an issue of material fact whether partial performance by ECE is sufficient evidence to satisfy the statute of frauds requirement for a writing signed by the party to be charged as this Court correctly ruled in its earlier opinion in this matter. Federal Ins. Co. v. Lighthouse Construction, Inc., 2005 U.S. Dist. LEXIS 18503, *4-5 (2005).

Lighthouse was a General Contractor for a construction project undertaken in 1999. As part of its role in the project, Lighthouse solicited bids from various subcontractors to perform specific portions of the project. On February 8, 1999 Lighthouse distributed a scope of work to ECE to design and erect a steel structure as part of the project. ECE provided a written proposal on February 23, 1999. By letter dated February 26, 1999, Lighthouse announced its "intent" to award the work to ECE and stated that it would be "forwarding a contract (AIA A401) for review and execution."

ECE began its work shortly after receiving Lighthouse's letter of intent and issued its first invoice for Engineering Services and Shop Drawings on March 22, 1999. In compliance with the standard provisions of A401, ECE used form AIA G703 (Application and Certificate for Payment) contract to

request payment. Significantly, as part of its first payment application, ECE included a 10% retainage (a/k/a holdback) equaling $3,600 on $36,000 worth of completed work.

On April 6, 1999, consistent with the letter of intent, Lighthouse presented ECE with two copies of AIA A401 to be signed and returned. Lighthouse closed the letter by stating that "[w]hen the documents have been fully executed, I will return the original to your attention." Among the provisions set forth in the AIA A401 subcontract was a 5% retention instead of the standard 10%. ECE continued to perform its scope of work without objection. And two weeks later, on April 21, 1999, ECE presented its second Application and Certificate of Payment on AIA G702, but this time reduced the retention to 5%. The reduction from 10% to 5% was in accordance with Article 11 of AIA A401 as modified by Lighthouse.

In short, Lighthouse's argument is that its letter of intent was not a contract. Furthermore, Lighthouse contends that the form AIA A401 agreement did not need to be signed since the contract here was capable of being performed in less than a year. Assuming, arguendo, that the form AIA A401 contract did implicate the Statute of Frauds, a letter of intent and surrounding memoranda coupled with partial performance will satisfy the Statute of Frauds and evidence that a contract was in fact made. The contract is the form AIA A401 standard agreement that Lighthouse references in its letter of intent. ECE's compliance with the terms of AIA A401, modification of its retainage, and failure to object to the form at any time (when referenced in the letter of intent or when sent) demonstrate that the contract was, in fact, AIA A401. Pursuant to the terms of the contract, Lighthouse is entitled to indemnity.

3

**COUNTER STATEMENT OF FACTS**

For the purposes of this opposition only, Lighthouse is in general agreement with the facts stated to the extent they are not contradicted by factual assertions made herein. The salient facts are as follows:

| | |
|---|---|
| February 8, 1999 | Lighthouse distributes its scope of work for a new building project (ECE's Appendix – A1-A2) |
| February 23, 1999 | ECE provides its Proposal for the scope of work to Lighthouse (ECE's Appendix – A3-A5) |
| February 26, 1999 | Lighthouse confirms its "intent" to award the contract to ECE using a form AIA A401 and asks that any questions be addressed by phone a call (ECE's Appendix – A6) |
| Intervening Period | Lighthouse begins its performance by providing Engineering Services and Shop Drawings (ECE Appendix – A13-A14 and A25-A29 (Williams testimony)) |
| | Lighthouse does not call with questions or otherwise object to the form AIA A401 contract, but performed the scope of work (ECE Appendix – A16-A29 (Williams testimony)) |
| March 22, 1999 | ECE presents its first Application and Certificate for Payment to Lighthouse on form AIA G702 pursuant to the requirements of the AIA A401 contract, with a 10% retainage factor. (ECE Appendix – A13-A14) |
| April 6, 1999 | Lighthouse presents ECE with the AIA A401 contract and asks that it be signed/returned. ECE continued to perform, but did not return the signed document. The specified retainage under Article 11 was 5% (ECE Appendix – A15, A25-A29, A32-A43) |
| April 21, 1999 | ECE presents its second Application and Certificate for Payment using AIA G702 with the agreed-to retainage of 5% (Exhibit A, Application/Certificate for Payment, Appendix B1-B2) |

## ARGUMENT

### I. LIGHTHOUSE'S LETTER OF INTENT CANNOT REPRESENT THE CONTRACT BETWEEN THE PARTIES

ECE argues that its Proposal and Lighthouse's letter of intent represent the contract between the parties. In making its argument, ECE characterizes Lighthouse's letter of intent as an acceptance of the Proposal. This is despite the very clear language of Lighthouse's letter, which states: "**By way of this letter, it is the intent** of Lighthouse Construction, Inc. to award the following work to your company . . . We will be forwarding a contract (AIA A401) for your review and execution." **(emphasis added)** (ECE Appendix – A6).

The letter of intent cannot, as a matter of law, constitute a complete agreement between the parties. Consistent with this Court's inquiry in Pantzer v. Shields Development Co., 660 F. Supp. 56 (D. Del. 1986), the letter was designated as Lighthouse's "intent" to contract, and anticipated a subsequent formal agreement that was to be provided. In Pantzer, this Court held that a letter of intent stating that a formal contract would follow could not be a binding contract. Id. at 59. The letters at issue in Pantzer were an October 18, 1984 offer to purchase a shopping center and a November 15, 2004 letter of intent to purchase/sell the shopping center. Lighthouse's letter of intent, like the letter in Pantzer, clearly indicates that the document was not intended to be a contract. Rather, it confirmed Lighthouse's intent to enter into a specific contract (i.e., AIA A401). *See, also*, Sussex Equipment Co. v. Burke Equipment Co., 860 A.2d 812 (Del. 2004) (holding that a letter of intent executed by the parties was not a valid contract where it was subject to final negotiations).

5

## II. THE CONTRACT BETWEEN LIGHTHOUSE AND ECE WAS THE STANDARD FORM AIA A401 AND IS BINDING

The AIA A401 contract is a universally recognized form that is published and copyrighted by the American Institute of Architects. The contract itself is titled "Standard Form of Agreement Between Contractor and Subcontractor". The contract was properly identified by Lighthouse in the letter of intent and was subsequently presented to ECE for execution. While ECE did not formally execute the document, it did perform under the terms of the contract and at no time raised any concerns or questions regarding the contract. ECE first performed knowing that the applicable contract would be AIA A401 pursuant to the letter of intent. Additionally, ECE complied with the terms of the contract, including the specific payment application protocol set forth, and the modified retainage of 5%. Moreover, ECE used the companion form AIA G702 as part of the application for payment process.

### A. The Statute of Frauds is Inapplicable

ECE asserts that the AIA A401 contract, inclusive of the indemnity provision, cannot be enforced because no signed writing exists to satisfy Delaware's Statute of Frauds. 6 Del. C. § 2714(a). However, no such signed writing is necessary. The Delaware Supreme Court has noted that "it has been the law in Delaware for many years that the Statute of Frauds does not apply to a contract which may, by any possibility, be performed within a year." Haveg Corporation v. Guyer, 211 A. 2d 910 (Del. 1965). "The law is settled authoritatively that…unless it appear that the contract could not possibly be performed within one year from the making thereof, its enforcement is not prohibited by the statute." Duchatkiewicz v. Golumbuski, 111 A. 430 (Del. Ch. 1920). ECE completed its work and submitted its final request for payment on August 24, 1999, well within a year of its initial negotiations and agreement with Lighthouse. (Exhibit B, Final Payment Application No. Six, B3-B4)Therefore, the fact that the form AIA A401 contract was not signed is irrelevant, and it should be enforced.

Even assuming, for the sake of argument, that the Statute of Frauds is implicated by the AIA A401 contract, a signed writing is still unnecessary. As recognized by this Court's August 30, 2005 Memorandum Opinion, a contract "need not be signed to be enforceable, if the parties have manifested an intent to form a contract or if partial performance has occurred under the unsigned contract." Federal Ins. Co. v. Lighthouse Construction, Inc., 2005 U.S. Dist. LEXIS 18503, *4-5 (2005)(citations omitted). In this case, it cannot be disputed that there was partial performance under the unsigned contract. In fact, there was full performance. Partial performance by a party is regarded as substantial evidence that a contract was in fact made, thereby rendering the policy underlying the Statute of Frauds inapplicable. Quillen v. Sayers, 482 A.2d 744, 747 (Del. 1984).

### B. The Conduct of the Parties Demonstrates the Existence of a Contract

The conduct of the parties also demonstrates that AIA A401 is an enforceable contract. ECE's first payment application followed the standard AIA A401 application for payment requirements using the appropriate AIA form. Article 11 of AIA A401 requires, among other things, that the contractor include a schedule of values among the various portions of the work, percentage of completion, aggregate of previous payments, total completed, and a designation of the retainage percentage. (ECE Appendix – A38-A39). ECE complied with these specific requirements of the contract that cannot be found in any other writing in this matter. (See, e.g., ECE Appendix – A13-A14).

Moreover, after receiving the A401 contract under Lighthouse's cover letter dated April 6, 1999, ECE modified its practices to conform to the contract's specific terms. Specifically, under Article 11.2, the contract mandated a 5% retainage. In submitting its first payment application, before it received the actual A401 contract, ECE initially applied a 10% retainage, but thereafter, when submitting its second and later applications, ECE followed the 5% term set forth in the contract. When

7

asked about the reduction from 10% to 5%, Mr. Williams, a principal of ECE, testified as follows (Exhibit C, Williams Dep. pp. 101-102, Appendix B5-B8):

> Q. And then I see that the retainage is shown as 5 percent. Do you see that?
> A. Yes.
> Q. Do you know what caused the retainage to be reduced from ten to 5 percent?
> A. In general, industry practice is once you are at 50% complete a project that they reduce your retainage to 5 percent.

The second payment application (Appendix A1-A2) marked the reduction to a 5% retainage. Pursuant to the application, the total complete was $314,000 or just 28% (i.e., not 50%) of the project. This contradiction presents a triable issue of fact. Lighthouse asserts that the reduction to 5% demonstrates that AIA A401 was the contract between the parties.

It is also important to note that the status of the AIA A401 contract in this case is not unique in the context of construction projects. Notably, the court in Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (U.S. App. 1996) resolved a strikingly similar fact pattern by enforcing an unsigned purchased order, with accompanying documents, based on the conduct of the parties. In Roberts, the general contractor asked the subcontractor to submit a bid on a project. Id. at 250. The subcontractor's bid was then verbally accepted and it proceeded with work. Id. Six days later, the general contractor sent a letter to the subcontractor confirming that the purchase order documents would be forwarded as soon as they were completed. Id. The subcontractor continued its work. Nearly two months later, the general contractor sent the purchase order and several accompanying documents that, unlike this matter, were never previously identified. Id. In an action to enforce the subcontract accompanying the purchase order, the subcontractor argued that it was not performing pursuant to the unsigned purchase order documents. Id. at 251. The court found that the general contractor demonstrated acceptance of the purchase order documents by complying with certain notification terms and negotiation of a delay penalty. Id. at 252. Cf. Kerschling v. Lake Forest School

8

District, 687 F. Supp. 927 (D. Del. 1988) where the U.S. District Court for Delaware suggested that it would hold a school board to the requirements outlined in an <u>un</u>signed employment contract sent one week after a teacher had orally agreed to accept an offer and this acceptance was ratified by the school board. Id.

Lighthouse's argument is even more compelling than that presented in Roberts, supra, based on the specified contract being properly identified in the letter of intent.

## CONCLUSION

9

Lighthouse's letter of intent to award a contract to ECE following the submission of a proposal cannot be misconstrued as a contract. Under the clear wording of the letter, Lighthouse was expressing its intent to enter into a contract and specifically identified the terms of the contract with reference to a universally recognized and copyrighted form document, the AIA A401 Standard Agreement Between Contractor and Subcontractor. ECE proceeded to perform its scope of work after receiving the letter of intent. It also complied with the specific terms of the AIA document with respect to, among other things, payment applications. ECE even modified its billing practices to a reduced 5% retainage following receipt of and in accordance with the contract. ECE cannot avoid the consequences of the contract where it performed, for consideration of $1,115,960, according to the contract's specific terms and without objection.

Respectfully submitted,

CHRISSINGER & BAUMBERGER

/s/ David L. Baumberger, Esquire
David L. Baumberger (I.D. No. 2420)
Three Mill Road, Suite 301
Wilmington, DE 19806
(302) 777-0100
Attorney for Defendant/Third-Party Plaintiff Lighthouse Construction, Inc.

Dated: November 4, 2005