IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY a/s/o EZIBA.COM, INC./AVACET, INC., EBIZA SECURITIES CORP.    and MILLERS CAPITAL INSURANCE COMPANY a/s/o DEL-HOMES CATALOG GROUP, LLC, | ) ) ) ) ) ) | Civil Action No. 04-339/04-1322 JJF<br><br>CONSOLIDATED ACTION<br><br>JURY OF TWELVE DEMANDED |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., and O'DONNELL, NACCARATO & MACINTOSH, INC. and EAST COAST ERECTORS, INC. | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| LIGHTHOUSE CONSTRUCTION, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| EAST COAST ERECTORS, INC., | ) ) | |
| Third-Party Defendant. | ) | |

**DEFENDANT/THIRD-PARTY DEFENDANT EAST COAST ERECTORS, INC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST LIGHTHOUSE CONSTRUCTION, INC.**

COMES NOW Defendant and Third-Party Defendant East Coast Erectors, Inc. ("ECE") and files this Reply Brief in Support of its Motion for Partial Summary Judgment against Lighthouse Construction, Inc. respectfully showing the Court as follows:

| | |
|---|---|
| **McLAIN & MERRITT, P.C.** | **WETZEL & ASSOCIATES, P.A.** |
| Robert B. Hill, Pro Hac Vice | Benjamin C. Wetzel, III (I.D. No. 985) |
| 3445 Peachtree Road, NE | Natalie M. Ippolito (I.D. No. 3845) |
| Suite 500 | The Carriage House, Suite 201 |
| Atlanta, GA 30326 | 1100 N. Grant Avenue |
| (404) 266-9171 | Wilmington, DE 19805 |
| | (302) 652-1200 |

*Attorneys for Defendant and Third-Party Defendant East Coast Erectors, Inc.*

Dated: November 14, 2005

**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| TABLE OF AUTHORITIES…………………………………………………….…... ii |
| STATEMENT OF FACTS…………………………………………………….......1 |
| ARGUMENT……………………………………………………………….....…..3 |
| CONCLUSION……………………………………………………………….…..10 |

# TABLE OF AUTHORITIES

                                                                                     **Page**

## FEDERAL CASES

Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300 (3d Cir. 1995) ..................3

Robert & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (7th Cir. 1996) ….........7,8

## STATE CASES

Chesapeake Utilities Corp. v. Teal Construction, Inc., 401 A.2d 101 (Del. Super. 1971) .6

Haveg Corp. v. Guyer, 211 A.2d 910 (Del. 1965) ……………………………………..6

Pantzer v. Shields Development Co., 660 F. Supp. 56 (D. Del. 1986) …………………..3

Quillen v. Sayers, 482 A.2d 744 (Del. 1984) …………………………………………..6

Sussex Equipment Co. v. Burke Equipment Co., 2004 Del. LEXIS 492 ………………...3

## STATUTES AND RULES

6 *Del C.* § 2714(a) …………………………………………………………………...5

10 *Del. C.* § 8106 ……………………………………………………………………6

**STATEMENT OF FACTS**

ECE incorporates by reference the statement of facts contained in its Opening Brief. In addition, ECE submits the following.

1. ECE's February 23, 1999 proposal included a Proposed Project Schedule. (Exhibit A; Appendix C-1 to C-4).

2. According to ECE's president, the AIA Standard Form of Agreement (the "AIA Form") was not part of its contract with Lighthouse on this project or on any other project.

> Q: Have you done work for Lighthouse other than on this project?
> A: Yes.
> Q: Have they sent to you a Standard Form Agreement on other projects?
> A: Not that I can recall, but I'm not saying that they haven't.
> ***
> Q: Did you ever have to refer to this document during the course of the work?
> A: No.
> Q: Do your documents, Exhibits 120 or 121, refer at all to indemnities between the parties?
> A: No.
> Q: How about safety?
> A: No.
> Q: How about any warranties?
> A: No.
> Q: What about any termination provisions of the contract?
> A: No.
> Q: And are those items that are typically contained in contracts in your company?
> A: Sometimes.
> Q: Sometimes?
> A: Yes.
> Q: And sometimes you operate without those terms under a contract?
> A: Yes.
> Q: Do you normally operate without an indemnity or warranty provision?

1

> A: There's really nothing normal today about contracts anymore. More often than not, this standard form is not used as individual contractors have opted for their own version of a contract.
> Q: Well, in 1999, were you operating or did you perform contracts that had no provisions for indemnification, warranties?
> A: I'm sure I did.

(Exhibit B, Williams Dep. pp. 207, 212-213; Appendix C-5 to C-9).

3. Robert MacLeish, Lighthouse's president, testified that ECE's proposal was accepted with minor modifications.

> Q: I'm sorry. I don't remember if I asked you if this proposal from Mr. Williams on February 23, '99, was accepted or not?
> A: It was. I think there was some minor modifications made to his proposal, cross-referenced to the scope of work that was also sent out.

(Exhibit C, MacLeish Dep. p. 332; Appendix C-12).

**ARGUMENT**

I. **THE FEBRUARY 26, 1999 LETTER WAS AN ACCEPTANCE OF ECE'S FEBRUARY 23, 1999 PROPOSAL AND FORMED A VALID CONTRACT.**

ECE has established the existence of a valid written contract without indemnity. Lighthouse has the burden to bring forth evidence establishing a genuine issue of material fact in order to defeat ECE's motion for summary judgment. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (citations omitted). Lighthouse has failed to meet that burden.

The cases cited by Lighthouse do not support its contention that the February 26, 1999 letter was not a contract, and their facts are easily distinguishable. In Pantzer v. Shields Development Co., 660 F. Supp. 56 (D. Del. 1986), the parties exchanged letters regarding the sale of a shopping center, subject to a satisfactory lease for a lumber company the seller's family would continue to operate. The court held that the letters between the parties did not constitute a complete agreement because an essential term of the contract - the terms of the lease - was missing. The court found the letter of intent operated as an option contract, because the letter designated a 30 day due diligence period where the seller agreed not to accept or pursue other offers. Id. at 60. In Sussex Equipment Co. v. Burke Equipment Co., 2004 Del. LEXIS 492, the court determined that the letter of intent, which stated, "This is an agreement in principle, subject to final

3

negotiations" was not a valid contract.

In contrast to Panzer and Sussex Equipment Co., the February 26, 1999 letter did not include any additional terms or indicate that the contract was subject to additional negotiation. In fact, the February 26, 1999 letter accepted the exact terms proposed by ECE. All essential terms required to form a valid contract were contained within the two letters: a detailed description of the work, the price, options, exclusions and a proposed project schedule. Furthermore, Lighthouse ignores the testimony of its own president, Bob MacLeish, who testified that he accepted ECE's proposal, with only minor modifications that were related to the scope of work. Notwithstanding the fact that the acceptance includes the word "intent," Lighthouse's February 26, 1999 letter was clearly an acceptance of ECE's offer, thus forming a valid contract.

Lighthouse contends that there is a material issue of fact regarding whether the February 23, 1999 and February 26, 1999 letters constituted a contract. In support of this contention, Lighthouse points to the fact that ECE changed its retainage from ten percent in its first payment application, to five percent in its second payment application. Lighthouse also argues that ECE submitted its payment applications in accordance with the AIA Form. Regarding the submission of the payment applications, the first application was submitted before ECE received the AIA Form. A close inspection of the AIA Form reveals that the payment terms were typed, and not part of the "standard" form (Appendix A-38); therefore, not having had the AIA Form when the first payment application was submitted, ECE did not submit the application according to it. The fact that ECE changed its retainage from ten percent to five percent does not create a material issue of fact. ECE never referred to the AIA Form during the course of the work. A

4

rational person could not conclude that the AIA Form was the parties' contract based on these facts. The parties' contract was comprised of the February 23, 1999 and February 26, 1999 letters, which contained all essential terms necessary to form a valid contract. Consequently, summary judgment must be granted in ECE's favor.

### II.   A CONTRACT TO INDEMNIFY IS WITHIN THE STATUTE OF FRAUDS.

In arguing that the statue of frauds is inapplicable, Lighthouse completely ignores 6 *Del C.* § 2714(a), which provides that a contract to answer for the debt of another must be in writing. The indemnity provision included in the unsigned AIA Form would require ECE to indemnify Lighthouse for any liabilities arising out of the work of the contract and to be liable for the expense and obligation to defend Lighthouse from claims of other parties, without regard to when the action is filed. The term of the obligation to indemnify and defend would extend for the applicable period of the statute of limitations, e.g., more than three years for damage to real property. Indeed, Lighthouse contends that ECE must indemnify and defend Lighthouse for this action which was filed and is pending more than five (5) years from the date of the agreement. Lighthouse fails to rebut by its brief or evidence that the contract it seeks to recover under is governed by § 2714 (a). Without addressing § 2714(a), Lighthouse contends that the contract does not fall within the statute of frauds because ECE completed its performance "well within a year of its initial negotiations and agreement with Lighthouse." Thus Lighthouse fails to establish a genuine issue of material fact for two reasons. First, the indemnity provision included only in the unsigned AIA Form is unquestionably an obligation to be responsible for the obligations of another governed by § 2714(a) of the statute of frauds

5

and the obligation of indemnity requires performance well beyond one year and is accordingly not possible of being fully performed within one year.

The cases cited by Lighthouse neither involve indemnity nor consider the existence of a prior written agreement. In Haveg Corp. v. Guyer, 211 A.2d 910 (Del. 1965), the court found that an oral agreement between the parties for cutting and sewing nylon tape could be fully performed within one year and was not, therefore, governed by the statute of frauds. Quillen v. Sayers, 482 A.2d 744 (Del. 1984) stands for the proposition that an exception to the statute of frauds exists "when there is evidence of actual part performance of an oral agreement."

The essential consideration is not whether the steel for the 1999 building could have been erected within one year, as argued by Lighthouse, but rather, whether the obligation to indemnify Lighthouse could possibly be performed within one year. The indemnity Lighthouse seeks to enforce runs for many years, and is not fully performed within one year. The statute of limitations on a third party claim for contribution or indemnification does not even begin to run until the indemnitee suffers a loss through payment of a claim through adverse judgment or settlement. Chesapeake Utilities Corp. v. Teal Construction, Inc., 401 A.2d 101 (Del. Super. 1971); 10 *Del. C.* § 8106. The obligation for ECE to indemnify Lighthouse could not be performed within one year, thus the indemnification provision is within the statute of frauds. Absent a signed writing, ECE is not required to contractually indemnify Lighthouse.

    **III.    THE PARTIES' CONDUCT WAS ENTIRELY CONSISTENT WITH THE TERMS OF THE CONTRACT ENTERED INTO ON FEBRUARY 26, 1999.**

Lighthouse relies on Robert & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (7th Cir. 1996) to support its argument that the parties' conduct demonstrates that the AIA Form is an enforceable contract. However, there are a number of significant differences between these two cases. In Roberts & Schaefer Co., the parties, a contractor and subcontractor, had an agreement based on a bid package and an oral acceptance, which was followed by a purchase order and accompanying documents, including a document entitled, Roberts and Schaefer Company Construction General Notes and Conditions ("General Notes and Conditions") and a subcontract agreement. The purchase order contained a detailed breakdown of the work to be performed, the work completion schedule, the contract price and the payment terms. The subcontract agreement was never signed by the subcontractor. Prior to entering into this contract, the contractor and subcontractor had worked together on another project. The subcontract agreement on that project was signed by the subcontractor, and included an identical General Notes and Conditions provision. The contractor sued the subcontractor, alleging that the parties had entered into a contract, which was defined by the terms of the purchase order and accompanying documents. The subcontractor disagreed, and the district court found that the subcontractor's work was "entirely consistent with the agreement formed upon [contractor's] acceptance of [subcontractor's] bid." Id. at 251.

In reversing the decision of the district court, the appellate court cited several reasons that the subcontractor's conduct demonstrated it was performing according to the terms of the purchase order and accompanying documents. First, the subcontractor notified the contractor several times in writing of delays that might jeopardize the completion schedule contained in the purchase order. Second, the parties negotiated a

new work schedule and the delay penalty that might result from the change. These negotiations demonstrated that the subcontractor was aware of the delay clause in the subcontract agreement. Third, the court found "most damaging to [subcontractor's] claim that the General Notes and Conditions were unacceptable to it is that, for the [previous] project, subcontractor agreed to exactly the same General Notes and Conditions." Id. at 253.

The facts of the present case could not be more dissimilar. There is no evidence that ECE negotiated with Lighthouse about anything after it received the acceptance on February 26, 1999. ECE never referred to the unsigned AIA Form during its performance of the work. ECE's proposal contained all material terms, including a detailed breakdown of the work to be performed, the work completion schedule and the contract price. Significantly, the factor that the appellate court in Roberts & Schaefer Company found most "damaging" to the subcontractor's position does not exist here. Lighthouse and ECE had worked on other projects together, but never entered into an identical agreement. ECE's president did not recall entering into one, and Lighthouse has not presented any evidence that such a document exists. Thus the prior conduct of the parties suggests that it was not their practice to enter into either an AIA Form 401 type of form agreement or any other form of contract providing indemnity.

Viewing the facts in a light most favorable to Lighthouse, all of the evidence points to the fact that the February 23, 1999 and February 26, 1999 letters and related attachments including the scope of work, project schedule and all essential business terms comprised the parties' contract. Even Lighthouse's president testified that ECE's February 23, 1999 proposal was accepted. The "minor modifications" related only to the

8

scope of work. ECE performed its work strictly in accordance with the terms of its valid contract, and no evidence exists to the contrary. There is no provision for indemnity in the only contract documents signed by the parties, and the evidence is uncontradicted that the neither Lighthouse nor ECE signed the AIA Form containing an indemnity provision. Therefore, as a matter of law, summary judgment must be granted in ECE's favor dismissing Lighthouse's third party claim for express contractual indemnity.

## CONCLUSION

The contract between ECE and Lighthouse does not require indemnity, and no signed writing evidencing ECE's alleged obligation to contractually indemnify Lighthouse exists. ECE is not contractually required to indemnify Lighthouse. Therefore, for the reasons set forth in its Opening Brief, and for the reasons set forth herein, ECE's motion for partial summary judgment on the issue of contractual indemnification must be granted.

Respectfully submitted,

WETZEL & ASSOCIATES, P.A.

/s/ Natalie M. Ippolito
Benjamin C. Wetzel, III (I.D. No. 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200
nippolito@wetzellaw.com

Robert B. Hill, Admitted Pro Hac Vice
MCLAIN & MERRITT, P.C.
3445 Peachtree Road N.E., Suite 500
Atlanta, GA 30326

*Attorneys for Defendant East Coast Erectors, Inc.*

Dated: November 14, 2005

1 of 1 DOCUMENT

**SUSSEX EQUIPMENT COMPANY, a Delaware corporation and GEORGE M. ANDERSON, Plaintiffs Below, Appellants, v. BURKE EQUIPMENT COMPANY, a Delaware corporation and MARK BABBITT, Defendants Below, Appellees.**

No. 75, 2004

SUPREME COURT OF DELAWARE

*2004 Del. LEXIS 492*

September 22, 2004, Submitted
October 26, 2004, Decided

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**PRIOR HISTORY:** Court Below: Superior Court in and for New Castle County, No. 02C-11-152.

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**JUDGES:** Before HOLLAND, JACOBS and RIDGELY, Justices. Henry duPont Ridgely, Justice.

**OPINIONBY:** Henry duPont Ridgely

**OPINION:**

### ORDER

This 26th day of October, 2004, on consideration of the parties' briefs, it appears that:

(1) Sussex Equipment Company and George M. Anderson ("Sussex") appeal from a decision of the Superior Court granting summary judgment to Burke Equipment Company and Mark Babbitt ("Burke"). The trial judge determined that as a matter of law, the letter of intent executed by the parties on November 16, 1999 was not a valid contract. Sussex appeals the trial judge's decision arguing that the letter of intent was a contract, and that genuine issues of material fact exist as to the parties' intent and objective manifestations of assent. We have examined the record and conclude that the trial judge committed no legal error. Accordingly, the decision of the Superior Court is affirmed.

(2) In August or September 1999, Mark Babbitt approached George Anderson [*2] about acquiring Sussex Equipment Company after learning that Sussex was having financial difficulties. Sussex was in the business of selling Bobcat and Kubota agricultural, construction and commercial mowing equipment. Babbitt owned similar businesses in New Castle and Kent Counties and was seeking to expand his business into Sussex County.

(3) In the Spring of 1999, Anderson learned that Sussex was "out-of-trust" with Bobcat and Kubota because his former partner had been selling equipment without forwarding any proceeds to Bobcat and Kubota. Prior to the commencement of their negotiations, Anderson informed Babbitt that Sussex was out-of-trust with Bobcat and Kubota and that its franchise was in jeopardy. For this reason, Anderson allowed Babbitt to inspect the books, premises and inventory of Sussex.

(4) On or about November 16, 1999, Anderson and Babbitt executed a document regarding the terms of the sale of Sussex to Burke. The last paragraph of the document, paragraph fourteen, provided, "This is an agreement in principle, subject to final negotiations." n1 In January 2000, Bobcat and Kubota revoked Sussex's franchise. As a result, Babbitt broke-off negotiations with Anderson. [*3]

 n1 Appendix to Appellants' Opening Brief at A-12.

(5) Sussex filed a lawsuit in Superior Court on November 19, 2002 against Burke for breach of contract. The trial judge granted summary judgment to Burke on the basis that as a matter of law, the parties did not have a contract. Sussex appeals the decision of the Superior Court, arguing that formation of a contract should be

determined by analyzing extrinsic evidence to determine whether the parties intended to enter a contract, and whether there were objective manifestations of assent. Sussex maintains that there are genuine issues of material fact that should be decided by the trier of fact.

(6) Contract interpretation is a question of law. n2 We therefore review the trial judge's decision for legal error. n3 Under Delaware law, purported contracts are to be "construed as a whole, to give effect to the intentions of [[the parties."]] n4 If the contract language is clear and unambiguous, then the parties' intent is ascertained by "'a reasonable reading [*4] of the plain language [[of the policy.'"]] n5 Extrinsic evidence is only used if the parties' intent cannot be derived from the plain meaning of the contract. n6

n2 *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992)* (citing *Aetna Cas. and Sur. Co. v. Kenner, 570 A.2d 1172, 1174 (Del. 1990)).*

n3 *Kenner, 570 A.2d at 1174.*

n4 *Northwestern Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. 1996)* (citing *E.I. duPont de Nemours and Co., Inc. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del. 1985)).*

n5 *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 686 A.2d 152, 156 (Del. 1996)* (quoting *Kenner, 570 A.2d at 1174*).

n6 *See Pellaton v. Bank of New York, 592 A.2d 473, 478 (Del. 1991)* (citing *Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 343 (Del. 1983)). See also Cleveland Trust Co. v. Wilmington Trust Co., 258 A.2d 58, 65 (Del. 1969)* ("Parol evidence may not be admitted to vary or contradict a plain and unambiguous provision of a trust agreement.") (citations ommitted).

[*5]

(7) The language of the letter of intention in this matter clearly indicates that the document was not intended to be a contract. The language in paragraph fourteen is plain, and its placement as the last paragraph of the document and emphasis by underlining emphasizes the fact that the parties did not intend for the documents to be a binding contract. No further analysis of the parties' intention is therefore required.

**NOW, THEREFORE, IT IS ORDERED** that the judgment of the Superior Court is *AFFIRMED*.

BY THE COURT:

/s/Henry duPont Ridgely

Justice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY a/s/o EZIBA.COM, INC./AVACET, INC., EBIZA SECURITIES CORP.    and MILLERS CAPITAL INSURANCE COMPANY a/s/o DEL-HOMES CATALOG GROUP, LLC, | ) ) ) ) ) ) | Civil Action No. 04-339/04-1322 JJF<br><br>CONSOLIDATED ACTION |
| Plaintiffs, | ) ) | JURY OF TWELVE DEMANDED |
| v. | ) ) | |
| LIGHTHOUSE CONSTRUCTION, INC., BECKER MORGAN GROUP, INC., and O'DONNELL, NACCARATO & MACINTOSH, INC. and EAST COAST ERECTORS, INC. | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| LIGHTHOUSE CONSTRUCTION, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| EAST COAST ERECTORS, INC., | ) ) | |
| Third-Party Defendant. | ) | |

## ORDER

**AND NOW,** this _____ day of _____, 2005, upon consideration of Defendant/Third-Party Defendant East Coast Erectors, Inc.'s Motion for Partial Summary Judgment on the issue of contractual indemnification,

**IT IS HEREBY ORDERED** that Defendant and Third-Party Defendant East Coast Erectors, Inc.'s Motion for Partial Summary Judgment is GRANTED. Defendant and Third-Party Plaintiff Lighthouse Construction, Inc.'s claim for express contractual indemnification against East Coast Erectors, Inc. is dismissed with prejudice.

JOSEPH J. FARNAN, JR.
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2005, I electronically filed the within **Defendant/Third-Party Defendant East Coast Erectors, Inc.'s Reply Brief and Appendix in Support of its Motion for Partial Summary Judgment** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

David L. Baumberger, Esquire
Chrissinger & Baumberger
Three Mill Road, Suite 301
Wilmington, DE 19806

James F. Bailey, Jr., Esquire
Bailey & Associates
Three Mill Road, Suite 306A
Wilmington, DE 19806

Robert K. Beste, Jr., Esquire
Cohen, Seglias, Pallas, Greenhall & Furman, PC
Nemours Building
1007 Orange Street, Suite 205
Wilmington, DE 19801

Frank E. Noyes, II, Esquire
White & Williams, LLP
PO Box 709
Wilmington, DE 19899-0709

Sean J. Bellew, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

Victoria K. Petrone, Esquire
Tighe, Cottrell & Logan, PA
PO Box 1031
Wilmington, DE 19899

I hereby certify that on November 14, 2005, I mailed by United States Postal Service, the document to the following non-registered participants:

Ron L. Pingitore, Esquire
White and Williams, LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395

Bruce W. McCullough, Esquire
McCullough & McKenty
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397

Dana Ostrovsky, Esquire
Cohen, Seglias, Pallas, Greenhall & Furman, P.C.
11th Floor, 1515 Market Street
Philadelphia, PA 19102

Steven K. Gerber, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Geoffrey W. Veith, Esquire
Rogut McCarthy Troy, LLC
One First Avenue - Suite 410
Conshohocken, PA 19428

WETZEL & ASSOCIATES, P.A.

/s/ Natalie M. Ippolito
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200
nippolito@wetzellaw.com